# BOYNTON v. BALL.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

Argued April 4, 5, 1887. — Decided April 25, 1887.

A discharge in bankruptcy may be set up in a state court to stay the issue of execution on a judgment recovered against the bankrupt after the commencement of the proceedings in bankruptcy and before the discharge; although the defendant did not before the judgment ask for a stay of proceedings under Rev. Stat. § 5106.

In the year 1865 Ball, the defendant in error, and one Griffin, since deceased, recovered a judgment against Boynton, the plaintiff in error, for $6223.99. In April, 1875, Ball commenced an action of debt in a state court of Illinois against Ball, to recover the amount of that judgment and interest

On the 19th of March, 1878, a rule was made that the defendant should plead, and on the 4th of the following April he pleaded as follows:

" And the defendant, by James I. Neff, his attorney, comes and defends the wrong and injury when, &c., and says that he does not owe the said sum of money above demanded or any part thereof in manner and form as the plaintiff hath above thereof complained against him. And of this the defendant puts himself upon the country, &c."

On this plea issue was joined, and, a jury being waived, the case was submitted to the court. At December Term, 1879, judgment was entered in the plaintiff's favor against the defendant for the sum of $6233.99 debt, and $5234.99 damages. Execution issued therefor, which was returned unsatisfied on the 20th May, 1880.

. On the 25th March, 1881, Boynton filed a motion for a perpetual stay of execution on that judgment, supporting it by proof that he was declared a bankrupt on the 15th day of April, 1878, and that he received his certificate of discharge on the 23d December, 1880. Notice of this motion was served on Ball, who appeared and opposed the granting of it, setting up the appearance of Boynton in the suit, his plea, the joinder of issue, the submission to the court, and the entry of judgment — all after the commencement of the proceedings in bankruptcy, though before the date of the discharge. At the hearing in the Circuit Court at March Term, 1881, the motion for the stay of execution was denied. This judgment was affirmed on appeal by the Supreme Court of Illinois in March, 1882. *Boynton* v. *Ball*, 105 Ill. 627. Boynton then sued out this writ of error.

Mr. *Leonard Swett,* (with whom was Mr. *Edward R. Swett* on the brief,) for the plaintiff in error cited — English cases:

*Bouteflour* v. *Coates,* Cowp. 25 (1774); *Blandford* v. *Froud,* Cowp. 138 (1774); *Scott* v. *Ambrose,* 3 M. & S. 326 (1814); *Willett* v. *Pringle,* 5 Bos. & Pul. 190 (1806); *Dinsdale* v. *Eames,* 2 Brod. & Bing. 8 (1820); *Davis* v. *Shapley,* 1 B. & Ad. 54 (1830); *Barrow* v. *Poile,* 1 B. & Ad. 629 (1830); *Humphreys* v. *Knight,* 6 Bing. 572 (1830). Cases under the act of 1841: *Graham* v. *Pierson,* 6 Hill, 247 (1843); *McDougald* v. *Reid,* 5 Ala. 810 (1843); *Rogers* v. *Western Marine Ins. Co.,* 1 La. Ann. 161 (1846); *Curtis* v. *Slosson,* 6 Penn. St. 265 (1847); *Mechanics Banking Ass'n* v. *Lawrence,* 1 Sandf. 659 (1847); *Harrington* v. *McNaughton,* 20 Vt. 293 (1848); *Turner* v. *Gatewood,* 8 B. Mon. 613 (1848); *Blake* v. *Bigelow,* 5 Geo. 437 (1848); *Johnson* v. *Fitzhugh,* 3 Barb. Ch. 360, 372 (1848); *Peatross* v. *McLaughlin,* 6 Gratt. 64 (1849); *Cogburn* v. *Spence,* 15 Ala. 549, 554 (1849);[1] *Clark* v. *Rowling,* 3 Comst. 216 (1850);[2] *Fox* v. *Woodruff,* 9 Barb. 498 (1850); *Dick* v. *Powell,* 2 Swan (Tenn.), 632 (1853); *Downer* v. *Rowell,* 26 Vt. 397 (1854); *McDonald* v. *Ingraham,* 30 Mississippi, 389 (1855);[3] *Imlay* v. *Carpentier,* 14 Cal. 173 (1859). Cases under the act of 1867: *Cornell* v. *Dakin,* 38 N. Y. 253 (1868); *In re Stephen Brown,* 3 Bankr. Reg. 585 (1870); *In re Crawford,* 3 Bankr. Reg. 698 (1870); *In re Stevens,* Bankr. Reg. 367 (1871); *Monroe* v. *Upton,* 50 N. Y. 593 (1872); *Shurtleff* v. *Thompson,* 63 Maine, 118 (1873); *Norton* v. *Switzer,* 93 U. S. 355 (1876); *In re Stanfield,* 4 Sawyer, 334 (1877); *Dawson* v. *Hartsfield,* 79 No. Car. 334 (1878); *Dresser* v. *Brooks,* 3 Barb. 429 (1848); *Anderson* v. *Anderson,* 65 Geo. 518 (1880); *Arnold* v. *Oliver,* 64 Howard Pr. 452 (1883); *Windley* v. *Tankard,* 88 N. C. 223 (1883); *Root* v. *Espy,* 93 Ind. 511 (1883); *Easley* v. *Bledsoe,* 59 Texas, 488 (1883); *Braman* v. *Snider,* 21 Fed. Rep. 871 (1884); *Balliett* v. *Dearborn,* 27 Fed. Rep. 507 (1886).

*Mr. J. A. Crain* for defendant in error.

The very numerous authorities cited by the plaintiff as to whether, after a judgment against a bankrupt pending his bankruptcy proceedings, but before discharge received, the

---

[1] *S. C.* 50 Am. Dec. 140.   [2] *S. C.* 53 Am. Dec. 200.   [3] *S. C.* 64 Am. Dec. 166.

court will stay execution, are each and every of them decisions made upon bankrupt acts having nothing like the section of the act of 1867 found in the Rev. Stat. § 5106; that being a *new* section, and they are no authorities as to the duty that section imposes upon the bankrupt.

Section 14 of St. 49 Geo. III, c. 121, quoted by plaintiff in error, prohibits any creditor who shall have brought action or instituted suit against a bankrupt, on any demand arising *prior* to bankruptcy, or which might have been proved, from proving a debt unless on condition of relinquishing such suit or action. St. 6 Geo. IV, c. 16, § 59, also quoted by plaintiff, is to same effect.

Section 5 of the act of Congress of 1841, cited by plaintiff, provides that no creditor coming in and proving his debt shall be allowed to maintain any suit therefor, but shall be deemed to have waived all right of action; and it declares, as the effect of so proving, all actions commenced and unsatisfied judgments already obtained surrendered. Section 5105 of the Revised Statutes is to precisely the same effect. But inasmuch as Ball, the here defendant, has never proved his debt against Boynton, the plaintiff in error, nor has Ball in any way or manner connected himself with Boynton's bankruptcy proceedings, it is submitted that all the above mentioned sections have no bearing whatever on any question in this case.

St. 34 & 35 H. VIII, c. 4, enacted in 1542, was the first bankrupt act. Its preamble is as follows: "Whereas, divers and sundry Persons craftily obtaining into their hands great substances of other Men's Goods, do suddenly flee to, parts unknown, or keep their Houses, not minding to pay or restore to any of their Creditors their Debts and Duties, but at their own Wills and Pleasures, consume the Substance obtained by Credit of other Men for their Pleasure and delicate Living, against all Reason, Equity, and good Conscience; therefore, be it enacted, etc."

Every succeeding act up to St. 4 & 5 Anne, c. 17, contained like severe denunciations against this class of delinquents. By this last mentioned act it is provided that if the bankrupt has fully turned over all his estate to his creditors, and made full

disclosure, he shall have a certain allowance or exemption, and shall also, having fully conformed to the act, be allowed a certificate. This is the first statute giving either, and was continued into the more permanent act of St. 5 Geo. II, c. 30, where, by the 7th section, a discharge is given from all debts by him owing at the time he became bankrupt; and in case he should, after having received his certificate, be arrested, prosecuted, or imprisoned for any debt due before the time he became bankrupt, he was to be discharged on common bail, and might plead that the cause of action accrued before his bankruptcy.

No such provision, or anything having even a resemblance to § 5106, is to be found in either the Bankrupt Act of 1800, 2 Stat. 19, or that of 1841, 5 Stat. 440; consequently, any decision predicated on those acts has no weight, and is of little authority in determining the effect of, and duties imposed on the bankrupt by, this new section in the act of 1867.

This was a new feature of the bankrupt law; neither it, nor anything like it, had ever existed, either in England or this country, and experience indicated, and justice demanded, that there should be some mode provided by which, when a suit was pending against a defendant (as was *Ball* v. *Boynton*), and he went into bankruptcy, that when adjudicated a bankrupt he could stay such suit until the question of whether he was to get a discharge should have been first determined.

The act created this privilege and defence, which, if defendant had then interposed in this case, the judgment in question never could, on his own theory of the effect of his discharge, have been recovered against him. His duty, after going into bankruptcy, is clearly pointed out in *Holden* v. *Sherwood*, 84 Ill. 94, where the defendant, after verdict, suggested his bankruptcy, and filed his discharge, but did nothing more. Uniformly, since our very first act on the subject, the bankrupt having a certificate of discharge, has been required to plead it. *Fellows* v. *Hall*, 3 McLean, 281; *Steward* v. *Green*, 11 Paige, 551; *Manwarring* v. *Kouns*, 35 Texas, 171; *Park* v. *Casey*, 35 Texas, 536; *Seymour* v. *Browning*, 17 Ohio, 362; *Horner* v. *Spellman*, 78 Ill. 206.

We submit that the precedents established under a statute unlike any act of Congress ever existing here, established no principle that can be deduced from any bankrupt act ever in force in this country. And we maintain that § 5106 Rev. Stat. afforded defendant an ample opportunity and remedy, of which he neglected to avail himself for over nineteen months *before* our judgment. He then came into court, and without any intimation that he had gone into bankruptcy, or should rely on his bankruptcy, actually *joined us in submitting his case for trial*, by which we obtained our judgment incurring the costs thereof, and of the execution issued thereon, and he is, therefore, now estopped from interposing his discharge.

The rendition of the new judgment upon the old decree made such a new and essentially different debt that it thereby became not provable against his estate, and is not affected by his discharge. See *In re Gallison*, 2 Lowell 72, and the reasoning of the court, and the authorities on both sides cited in the opinion of the court. *In re Williams*, 3 Bankr. Reg. 79; *Dimock* v. *Revere Copper Co.*, 117 U. S. 559; *Holbrook* v. *Foss*, 27 Maine, 441; *Pike* v. *McDonald*, 32 Maine, 418;[1] *Fisher* v. *Foss*, 30 Maine, 459; *Sampson* v. *Clark*, 2 Cush. 173; *Woodbury* v. *Perkins*, 5 Cush. 86;[2] *Faxon* v. *Baxter*, 11 Cush. 35; *Carrington* v. *Holabird*, 17 Conn. 530; *Kellogg* v. *Schuyler*, 2 Denio, 73; *Gould* v. *Hayden*, 63 Ind. 443; *Steadman* v. *Lee*, 61 Geo. 59; *Rutherford* v. *Roundtree*, 68 Geo. 725; *Evarts* v. *Hyde*, 51 Vt. 183; *Hersey* v. *Jones*, 128 Mass. 473; *Miller* v. *Clements*, 54 Texas, 351; *Bradford* v. *Rice*, 102 Mass. 472; *McCarthy* v. *Goodwin*, 8 Missouri App. 380; *Wise's Appeal*, 99 Penn. St. 193; *Bown* v. *Morange*, 108 Penn. St. 69; *Brackett* v. *Dayton*, 34 Minn. 219; *Boynton* v. *Ball*, 105 Ill. 627; *Bowen* v. *Eichel*, 91. Ind. 22.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the state of Illinois. The question of Federal law, which gives jurisdiction

---

[1] *S. C.* 54 Am. Dec. 597.        [2] *S. C.* 51 Am. Dec. 51.

to this court to review the judgment of the state court, arises out of the refusal of that court to give effect to a certificate of discharge in bankruptcy to Boynton, the plaintiff in error.

Ball, the defendant in error, brought suit against Boynton in the Circuit Court of the state of Illinois for Stephenson County, on April 16, 1877. To this Boynton filed his answer April 4, 1878, and judgment was rendered against him on December 9, 1879, for $6223.99 debt, and $5234.99 damages and costs. Pending this suit in the state court Boynton, on his own application, was declared a bankrupt April 15, 1878, and received his discharge from all his debts December 23, 1880. An execution on the judgment against Boynton in the state court was issued February 21, 1880, and returned unsatisfied. On March 25, 1881, Boynton filed a petition in the state court, asking for a perpetual stay of execution on the judgment rendered in favor of Ball, and filed a certified copy of his discharge in bankruptcy, together with certain affidavits. Ball was served with notice of this motion and appeared and made defence. The motion was overruled by the circuit court, from which ruling Boynton appealed to the Supreme Court of the state, which court affirmed the judgment of the court below with costs. 105 Ill. 627.

The question presented for us to consider is, whether the discharge in bankruptcy was, under the circumstances of this case, a discharge from the judgment rendered in the circuit court of Stephenson County while the proceedings in bankruptcy were pending. It will be perceived that the suit in the state court was commenced before the proceedings in bankruptcy in which the discharge was finally granted. It will also be perceived that the case lingered in the state court from April 16, 1877, until December 9, 1879, when the final judgment was rendered, a period of over two years, but that the plaintiff in error did not obtain his final discharge in bankruptcy until December 23, 1880, which was more than a year after the judgment was obtained against him in the state court.

In *Dimock* v. *The Revere-Copper Co.*, 117 U. S. 559, decided at the last term of this court, a case very similar to this was

presented to us for our consideration. Dimock, being sued in the state court of Massachusetts, made defence, and pending the action was discharged from all his debts under bankruptcy proceedings, receiving his certificate of discharge as a bankrupt a few days before final judgment against him in the state court. Notwithstanding he had this discharge at the time the judgment was rendered against him in the state court, he did not plead it in bar of that action nor bring it in any manner to the attention of the court. He was afterwards sued upon this judgment in the Supreme Court of the state of New York, and there pleaded his discharge in bankruptcy in bar of the action. That court, however, held the certificate of discharge not to be a bar, and rendered judgment against him. This judgment was reversed in the Supreme Court, in General Term, and that judgment was in turn reversed by the Court of Appeals, which restored the judgment of the court in Special Term. This court, in reviewing that judgment, said that the Superior Court of Massachusetts, in which the first suit was brought, had jurisdiction of the case, which was rendered complete by the service of process and the appearance of the defendant; that nothing that was done in the bankruptcy court had ousted the jurisdiction of that court, which, accordingly, proceeded in due order to judgment; that this judgment having been rendered after the certificate of discharge in bankruptcy which had not been called to the attention of the court in any manner, nor any stay of proceedings in the state court asked on account of the pendency of the bankruptcy proceedings, the question before the Massachusetts court for decision at the time it rendered judgment was, whether Dimock was then indebted to the Revere Copper Company, and we held that it had jurisdiction and rightfully rendered judgment on this question in favor of that company, notwithstanding the proceedings in the bankruptcy court of which it could not take judicial notice. This decision was supported by references to cases heretofore decided involving similar questions in this court and in the courts of the states.

The principle on which the case was decided was that, while the discharge in bankruptcy would have been a valid defence

to the suit if pleaded at or before the time judgment was rendered in the Massachusetts court, it had in that respect no more sanctity or effect in relieving Dimock of his debt to the company than a payment, or a receipt, or a release, of which he was bound to avail himself by plea or suggestion of some kind as a defence to the action in proper time; that, showing no good reason why he should not have presented that discharge, and permitting the judgment to go against him in the Massachusetts court, without an attempt to avail himself of it there, the judgment of that court was conclusive on the question of his indebtedness at that time to the copper company. That case, so parallel in its circumstances to the one now before us, would be conclusive of the latter if Boynton had had his certificate of discharge, or if the order for it had been made by the bankruptcy court before the judgment in the state court. But, as we have already seen, the judgment in the state court was rendered more than a year before the order of discharge in the bankruptcy court, and Boynton therefore had no opportunity to plead a discharge which had not then been granted, as a defence to that action.

Two propositions are advanced by counsel for defendant in error, in support of the judgment of the Supreme Court of Illinois, as reasons why the certificate obtained so long after the judgment in the state court should not have the effect of a discharge of the debt evidenced by that judgment. The first of these is, that the original debt on which the action was brought in the Circuit Court of Stephenson County no longer exists, but that it was merged in the judgment of that court against Boynton, and was therefore not released under the act of Congress, which declares that all debts provable against the estate of the bankrupt at the time bankruptcy proceedings were initiated shall be satisfied by the order of the court discharging the bankrupt. The argument is, that the judgment now existing against Boynton is not the debt that existed at the time bankruptcy proceedings were initiated; that by the change of the character of the debt from an ordinary claim or obligation to a judgment of a court of

record it ceased to be the same debt and became a new and different debt as of the date of the judgment. Some authorities are cited for this general proposition of a change of the character of the debt by merger into the judgment, and some authorities are also cited by counsel for plaintiff in error to the contrary. See Judge Blatchford, *In re Brown*, 5 Benedict, 1 ; *In re Rosey*, 6 Benedict, 507.

But this court, to which this precise question is now presented for the first time, is clearly of opinion that the debt on which this judgment was rendered is the same debt that it was before; that, notwithstanding the change in its form from that of a simple contract debt, or unliquidated claim, or whatever its character may have been, by merger into a judgment of a court of record, it still remains the same debt on which the action was brought in the state court and the existence of which was provable in bankruptcy.

The next proposition is, that under § 5106 of the Revised Statutes of the United States it was the duty of Boynton to make application to the state court, before judgment in that court, to have the proceedings there stayed, to await the determination of the court in bankruptcy on the question of his discharge. That section is in the following language :

" No creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined; and any such suit or proceedings shall, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of the discharge, provided there is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge; and provided, also, that if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed."

This cannot be construed to mean anything more than that where the bankruptcy proceedings are brought to the attention of the court in which a suit is being prosecuted against a

bankrupt, that court shall not proceed to final judgment until the question of his discharge shall have been determined. The state court could not know or take judicial notice of the proceedings in bankruptcy unless they were brought before it in some appropriate manner, and the provisions of this section show plainly that it does not thereupon lose jurisdiction of the case, but the proceedings may, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of his discharge. Even the direction that it shall be stayed is coupled with a condition that "there is no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge;" and with the further provision that "if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due."

These provisions exclude altogether the idea that the state court has lost jurisdiction of the case, even when the bankrupt shall have made application showing the proceedings against him. The whole section is also clearly impressed with the idea that this is a provision primarily for the benefit of the bankrupt, that he may be enabled to avoid being harassed in both courts at the same time with regard to such debt. It is therefore a right which he may waive. He may be willing that the suit shall proceed in the state court for many reasons; first, because he is not sure that he will ever obtain his discharge from the court in bankruptcy, in which case it would do him no good to delay the proceedings at his expense in the state court; in the second place, he may have a defence in the state court which he is quite willing to rely upon there, and to have the issue tried; in the third place, he may be very willing to have the amount in dispute liquidated in that proceeding, in which case it becomes a debt to be paid pro rata with his other debts by the assignee in bankruptcy.

If for any of these reasons, or for others, he permits the case to proceed to judgment in the state court, by failing to procure a stay of proceedings under the provisions of this section of the bankrupt law, or the assignee in bankruptcy

does not intervene as he may do, *Hill* v. *Harding*, 107 U. S. 631, he does not thereby forfeit his right to plead his final discharge in bankruptcy, if he shall obtain it, at any appropriate stage of the proceedings against him in the state court. And if, as in the present case, his final discharge is not obtained until after judgment has been rendered against him in the state court, he may produce that discharge to the state court and obtain the stay of execution which he asks for now. See *McDougald* v. *Reid*, 5 Ala. 810.

In *Rogers* v. *The Western Marine and Fire Ins. Co.*, 1 La. Ann. 161, the court in a similar case, says: "The proposition that Rogers should have pleaded the pendency of the bankrupt proceedings in the original suit, and cannot disturb the execution of the judgment which is final, is untenable. The discharge in bankruptcy was posterior to the rendition of this judgment, and operated with the same force upon the debt after it assumed the form of a judgment as it would have done had the debt remained in its original form of a promissory note."

.These and many other decisions under the bankrupt law of 1841 are to be found in the brief of the plaintiff in error. The same principle is decided in *Cornell* v. *Dakin*, 38 N. Y. 253, and in several cases in the District and Circuit Courts of the United States. There is a very able review of the subject by Judge Hillyer of the United States District Court of Nevada, in the case of *Stansfield*, reported in 4 Sawyer, 334.

The same thing was held by the Court of Appeals of New York, in *Palmer* v. *Hussey*, 87 N. Y. 303, 310, which was affirmed in this court on writ of error in *Palmer* v. *Hussey*, 119 U. S. 96.

It follows from these considerations that

*The Supreme Court of Illinois was in error in failing to give due effect to Boynton's discharge in bankruptcy, and its judgment is reversed, and the case is remanded to that court for further proceedings in accordance with this opinion.*