## TURNER v. TURNER.

### (District Court, D. Indiana. May 20, 1901.)

### No. 850.

**1. BANKRUPTCY—PROVABLE DEBTS—JUDGMENTS.**

Not all judgments or decrees against a bankrupt for the payment of money evidence debts provable against his estate, under Bankr. Act 1898, § 63a, cl. 1, and in determining their character the court will look beyond the form of the judgment, and consider the nature of the liability upon the original cause of action.

**2. SAME—ENJOINING ENFORCEMENT OF JUDGMENT—DECREE FOR ALIMONY.**

A decree awarding alimony to a wife on granting her a divorce, although creating a fixed liability payable at once, does not evidence a "debt" provable against the husband's estate in bankruptcy, under Bankr. Act 1898, § 63a, cl. 1, and from which he is released by a discharge, and proceedings to enforce its collection will not be enjoined by a court of bankruptcy on his petition. Alimony is a sum awarded for the wife's support in the enforcement of a marital duty imposed for the benefit of the wife, and also from public policy, and not a debt in a legal sense, and congress cannot be presumed, from the language used in the bankruptcy act, to have intended to permit a bankrupt to avail himself of its provisions to evade such duty, because a court, on granting a divorce to the wife, has definitely fixed the measure of the obligation.

In Bankruptcy. On petition of bankrupt for an injunction restraining proceedings to enforce a decree for alimony.

James L. Harman, for petitioner.
Dodge & Waltz, for respondent.

BAKER, District Judge. This is a petition for an injunction restraining the prosecution of proceedings supplementary to execution in a court of the state. On March 1, 1899, the defendant, then the wife of the complainant, filed her complaint in the circuit court of Elkhart county, Ind., against the complainant for divorce and alimony, on the ground of his cruel and inhuman treatment. Summons was personally served on the complainant herein, and such proceedings were had in the state court as that a decree of divorce was granted to the above-named defendant against the above-named complainant, and the court further adjudged and decreed that the defendant herein "do have and recover of and from the complainant herein the sum of $500 as alimony, together with the costs of suit." An execution was issued on the judgment for alimony, and was returned nulla bona. On February 15, 1901, said Turner filed his voluntary petition in bankruptcy in this court, and on the same day he was adjudged a bankrupt. The schedule filed with his petition discloses indebtedness to the amount of $653, $600 of which consists of the alimony decreed to his wife, with interest thereon. On March 28, 1901, the above-named defendant instituted proceedings supplementary to execution in the state court to enforce the payment of said decree for alimony. These supplementary proceedings are still pending. On May 13, 1901, the above-named complainant filed his petition for injunction in this court, asking the court to re-

strain the above-named defendant from the further prosecution of the proceedings supplementary to execution.

The right to the restraining order depends on the question whether the alimony decreed to the defendant is a debt provable against the bankrupt's estate. The assets of the bankrupt, as shown by his schedule, amount to the sum of five dollars. It is apparent that, if the decree for alimony is a provable debt, the wife will be wholly deprived of the provision made for her support by the statute of this state and by the decree of the court. Alimony is an allowance for support and maintenance, having no other purpose and provided for no other object. It is solely intended to furnish a provision for food, clothing, and habitation for the wife, who has been driven to seek a divorce on account of the husband's wrongful breach of the marriage contract. The amount necessary for this purpose depends more or less on the condition, habits of life, and social position of the parties, and, while the judgment of the court will be somewhat influenced by these considerations, the primary and distinctive purpose of support will never be lost sight of. It is not awarded as a debt, but for the enforcement of a duty growing out of the marital relation, which is not severed by the husband's misconduct. He owes this duty while the marital relation subsists, and the decree of alimony but continues this duty in force after the dissolution of the marriage contract. As has been well said, the allowance only becomes a debt in the sense that the general duty over which the husband had a discretionary control has been changed into a specific duty over which he has no control. The authorities hold that alimony is not strictly a debt due to the wife, but rather a general duty of support made specific by the decree of the court. 2 Am. & Eng. Enc. Law (2d Ed.) 117, and cases cited in notes. It is not a debt or liability which the wife can assign, nor can it be appropriated for a debt existing prior to the divorce. These special attributes of property are denied to the wife. It is evident that it is not an ordinary debt due to the wife, which she may deal with at her pleasure. It is a special fund, devoted to the support and maintenance of the wife, provided by the policy of the state to protect her from becoming a public charge, and to secure her against the temptations to a life of vice. The bankrupt in this state is entitled to an exemption to the amount of $600 from debts founded on a contract, express or implied. He is entitled to no exemption on a judgment for alimony. The bankrupt on debts founded on contract, express or implied, is entitled to claim his exemption, and thus, if the decree of alimony is a provable debt, the wife is left wholly dependent while her husband retains the $600, which by the policy of the state ought to be applied to her support.

It is claimed that this fund, provided in a wise public policy,—a policy essential to good morals and having its foundation in the family relations,—is an ordinary debt, which is extinguished by proceedings in bankruptcy. If this be so, it will at once be seen how effectually the bankrupt law overturns and defeats one of the wisest and most humane provisions of state policy for the protection of the injured wife. The policy of the state is to give bread to the

divorced wife, but the bankrupt act on complainant's contention would give her husks instead. It would rob the wife of her support, and reward the guilty husband by granting him a full and free discharge. It may be that congress has the power indirectly through a bankrupt law to defeat the policy of the state regulating the dissolution of the contract of marriage. It could not do it directly, because the regulation of the domestic relations is a matter purely of state concern. The court ought not to impute to congress a design to defeat the policy of the state unless the language claimed to accomplish it is so clear and unmistakable that no other construction can be given to it. The statute, so far as applicable to the present question, provides as follows: "Debts of the bankrupt may be proved and allowed against his estate, * * * which are (1) a fixed liability as evidenced by a judgment * * * absolutely owing at the time of the filing of the petition, * * * whether due or not." This does not include every judgment or decree for the payment of money. The authorities agree that it does not apply to installments of alimony made payable after the adjudication. The mere fact that money is decreed to be paid does not necessarily make it a "debt," within the meaning of that word as used in this statute. The statute specifies different classes of claims which are made provable. The one in question includes debts which are a fixed liability evidenced by a judgment. We have seen that alimony is not a debt reduced into judgment. It is a sum of money awarded for the wife's support in the enforcing of a marital duty, and it does not constitute a "debt," in the true sense of that word. The court will look beyond the form of the judgment. It will look at the nature of the liability, the original cause of action. The duty of marital support springs out of the contract of marriage, and continues until dissolved by death or the judgment of a competent court. A discharge in bankruptcy will not release a bankrupt from his obligation of support. The wife, during the marital relation, cannot prove her claim for support against the estate of her bankrupt husband. If a discharge will not release the bankrupt husband from his liability to furnish his wife support, why should such discharge absolve him from the performance of this duty, when, on account of the violation of his marriage contract, a court has decreed the amount of money that he should pay in satisfaction of this duty? In my opinion, the present bankrupt law ought not to receive a construction which would absolve the guilty husband from the duty of support, although the measure of that duty is fixed by a decree of court. The bankruptcy act of 1800 authorized the bankrupt to be discharged from "all debts." The act of 1841 authorized a discharge "of all persons whatsoever owing debts." And in Re Cotton, Fed. Cas. No. 3,269, it was held that a money judgment in a bastardy case was not a debt, within the meaning of the last-named act. It was also held in the same case that a money judgment in favor of the father for his daughter's seduction was not a debt. This case rests on the principle that it is the duty of the court to look behind the judgment, and to ascertain the nature of the cause of action; and, if the judgment is one which fixes the amount which should be paid by

the bankrupt in the performance of the duty of support, it is not a dischargeable debt. The principle ruled in this case, and in Re Garrett, Fed. Cas. No. 5,252, and in Re Lachemeyer, Fed. Cas. No. 7,966, is persuasive that neither of the acts of 1800, 1841, nor 1867 is to be so construed as to discharge a bankrupt from a decree of alimony.

It has been thought by some courts that the first clause of section 63a must be so construed as to include alimony where the amount is fixed by the decree and is made presently payable. The primary object in the interpretation of a statute is to ascertain the intention of the lawmakers. Whenever their intention is ascertained, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to its letter. A thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers of the law. In the construction of the statute, the court, in order to ascertain the intention of the legislature, will look to the whole statute, and all its parts, to the situation and circumstances under which it was enacted, to other statutes on the same subject, whether passed before or after the statute under consideration, and whether in force or not, and will carefully consider the purpose sought to be accomplished. A Massachusetts statute of wills provided that all persons of full age and of sound mind might dispose of their real estate as well by last will and testament in writing as otherwise, by any act executed in his or her lifetime. But this language was held not to include married women, on the ground that it was not the intention of the legislature to alter the relation between husband and wife or the legal effect of that relation. Osgood v. Breed, 12 Mass. 530; Wilbur v. Crane, 13 Pick. 284.

The object of the bankrupt act was to relieve the honest and unfortunate debtor from the burden of his debts. It is incredible that it was the intention of congress to relieve the guilty husband and father from his duty to support his wife and children. The change in the language of the present statute from that employed in the former statutes does not necessarily require a change of construction. The difference of language ought to be so clear and distinct as to evince a manifest intention to change the law so that the interpretation given to former statutes relating to the same subject-matter should be clearly inapplicable in the construction of the later statute. It seems to be thought by some that the statute includes every fixed liability evidenced by a judgment absolutely owing at the time of the filing of the petition, whether then payable or not; but the language of the statute does not justify such an interpretation. The clause in question only includes "debts * * * which are (1) a fixed liability as evidenced by a judgment * * * absolutely owing at the time of the filing of the petition, * * * whether payable or not." The ruling word is the word "debts" as in the former statutes. It is not a forced or unnatural construction to hold that the judgments intended do not include those for a fixed sum of money absolutely owing to the wife or child, decreed to be paid by the guilty husband and father for their support. If

money decrees for the enforcement of the marital or parental duty of support were intended to be included, it is difficult to understand why the law did not mention duties as well as debts. If congress intended to include money decreed for the support of the wife or child, it would have been easy to have used the words, "debts and duties * * * which are (1) a fixed liability as evidenced by judgment * * * absolutely owing, * * * whether due or not." Reducing a debt or duty into judgment works no change in its character. Notwithstanding the change in form from that of a simple debt or duty by merger into a judgment of a court of record, it still remains the same debt or duty on which the action was first brought. Boynton v. Ball, 121 U. S. 457–466, 7 Sup. Ct. 981, 30 L. Ed. 985.

The petition is addressed to a court of equity, and invokes its active assistance in the enforcement of an alleged legal right secured to the bankrupt by the bankrupt act. He who seeks equity ought to offer to do equity. "Equity will not feed the husband and starve the wife." Anything more disgraceful in a moral point of view than the complainant's attempt, by becoming a voluntary bankrupt, and manifestly for the sole purpose of cutting off the alimony decreed to his wife, cannot be imagined. When the active assistance of a court of equity is invoked in the enforcement of a naked legal right it will refuse its aid where granting it would work injustice, or, if it grants its assistance, it will only do it upon conditions which will mitigate or relieve the injustice. The complainant has made no offer to mitigate or relieve the injustice of depriving his wife of support. The prayer for injunction will be denied.