## In re O'BRIEN.
### No. 22207.

District Court, W. D. New York.
Feb. 20, 1935.

Hamlet A. Smyth, of Rochester, N. Y., for farmer-debtor.

John W. Ellis, of Ellicottville, N. Y., for Bank of Ellicottville.

RIPPEY, District Judge.

On December 11, 1934, a petition was filed in behalf of James O'Brien, farmer-debtor, for an order to show cause why the Bank of Ellicottville and its attorney, John W. Ellis, should not discharge or otherwise release a judgment against the farmer-debtor filed and docketed in the Cattaraugus county clerk's office on September 14, 1934, at 10:45 o'clock a. m. for $1,823.81; and upon such petition the Bank of Ellicottville and John W. Ellis were directed to show cause why such relief should not be granted at a term of this court on December 22, 1934. The parties appeared at that time.

From the records it appears in this case that the petition was filed on September 6, 1934, in due form, with schedules attached, as required by section 75 of the Bankruptcy Act (11 USCA § 203), and the Bank of Ellicottville was listed among the unsecured creditors. The matter was referred to F. Ross Gardner, conciliation commissioner, on October 18, 1934, and on November 13 the commissioner made his report. The record shows that a meeting of creditors was called on November 1, 1934, pursuant to notice dated October 22, 1934. In this notice nothing was stated that the farmer-debtor proposed to offer a composition or extension at the meeting; a list of creditors and their addresses was sent with the notice, but there was no statement of the inventory or of the farmer's indebtedness as shown by the schedules, nor was there a statement as to the amounts owing to each of the secured and unsecured creditors, as shown by the schedules, as required by the act. At the meeting seven creditors appeared, including the Bank of Ellicottville. The bank made no objections whatever to the regularity of the proceedings, and a proposal was then submitted by the farmer which was accepted by more than a majority of the secured and unsecured creditors, both in number and amount, and was objected to by none, except by the Bank of Ellicottville. Subsequently the commissioner recommended that the plan was favorable and that it should be confirmed; and on December 1, 1934, an order was made by this court confirming the proposal of the debtor.

The proposal was to the effect that the bankrupt should deposit with the Salamanca Trust Company, Salamanca, N. Y., and with the conciliation commissioner $6,980, subject to the order of the court. This money was proposed to be raised by the placing upon the farm property, real and personal, of a mortgage by the Federal Land Bank of Springfield and the agent of the land bank commissioner in the total sum of $7,200, and the creditors understood at the meeting that the cash would not be deposited until this mortgage had been duly executed and filed and the title was satisfactory to the mortgagee. The proposal was in writing, signed November 1, 1934, and submitted to the creditors, and was duly signed before the conciliation commissioner by the only secured creditor, which was the New York Joint Stock Land Bank, and by a large majority of the unsecured creditors, in fact, by all of the unsecured creditors present at the meeting, except the Bank of Ellicottville, as above noted.

From the moving papers it appears that on September 14, 1934, at 10:45 a. m., the Bank of Ellicottville, through its attorney, John W. Ellis, docketed a judgment of the Supreme Court of Cattaraugus county in the Cattaraugus county clerk's office in the sum of $1,823.81 against James O'Brien, a farmer-debtor, and Donald O'Brien, his son; that the causes of action set forth in the complaint on which such judgment was based arose on promissory notes made by the defendant to said bank. It further appears that the docketing of said judgment and the continuance of it constitute a lien upon the real property of the farmer and prevent the carrying out of the composition duly adopted by a majority of the creditors in number and amount and confirmed by this court.

The docketing of the judgment was clearly in violation of section 75, subd. (o), of the Bankruptcy Act (11 USCA § 203 (o). It was docketed in spite of written notice by the attorney for the farmer to the effect that a petition was about to be filed under section 75 of the Bankruptcy Act, which notice called attention of Mr. Ellis to subdivision (o) of section 75. On September 8, 1934, Mr. Ellis wrote to Mr. Smyth suggesting that the action proceed to judgment against Donald O'Brien, who was not a party through the bankruptcy proceeding, but intimating, although not expressly stating, that he intended to proceed with the action unless a restraining order was procured from the court.

Upon these facts the question arises as to whether a creditor can deliberately and intentionally and with full notice of the filing of the petition of the farmer block any plan for composition, notwithstanding that the majority of the creditors desire that the plan be adopted and notwithstanding the fact that the court has duly approved the plan.

Section 75 of the Bankruptcy Act, subdivision (e), 11 USCA § 203 (e), provides that: "After the filing of the petition and prior to the confirmation or other disposition of the composition or extension proposal by the court, the court shall exercise such control over the property of the farmer as the court deems in the best interests of the farmer and his creditors." Subdivision (o) of the same section provides as follows: "Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner, the following proceedings shall not be instituted, or if instituted at any time prior to the filing of a petition under this section, shall not be maintained, in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court."

■ The bank raises numerous questions with regard to the regularity of the proceedings, but those questions have no bearing on the point as to whether or not the Bank of Ellicottville had any right to docket its judgment after the filing of the petition in violation of the express wording of the above-quoted section. In our opinion, it had not any such right. All questions as to the regularity of the proceedings before the conciliation commissioner, and particularly concerning the form and regularity of the offer of the debtor, were disposed of by the order of confirmation. Whether that order was right or wrong is not now for this court to decide. If the Bank of Ellicottville felt aggrieved, its remedy was by appeal. In re Lans (C. C. A.) 158 F. 610; In re Shelley (D. C.) 8 F.(2d) 878; Taylor v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889; Calhoun v. Stratton (C. C. A.) 61 F.(2d) 302.

Under the Bankruptcy Act, before the enactment of section 75, the court has power to sell property free and clear of liens even extending to mortgage liens, and even though it is known that the property will not bring upon the sale sufficient to satisfy the lien. In re Franklin Brewing Co. (C. C. A.) 249 F. 333. Section 75 goes much further in the matter of the control of the bankrupt's property and of the actions of his creditors than the Bankruptcy Act did before the enactment of that section. In bankruptcy matters, there is no question as to the power of Congress to legislate with reference to estates of this kind. In re Cope (D. C.) 8 F. Supp. 778, 26 A. B. R. (N. S.) 549. In that case it is held that the Frazier-Lemke Act (section 75 (s) of the act, 11 USCA § 203 (s), goes further than any provisions of the Bankruptcy Act existing at the time of its enactment, and that the power of Congress under the bankruptcy clause of the Constitution is plenary and unlimited. Even though under the Bankruptcy Act, prior to the enactment of the Frazier-Lemke Act, a creditor could take judgment after the adjudication, such judgment would not constitute a lien or entitle the judgment creditor to any priority. In re McBryde (D. C.) 99 F. 686. The state court could, in the absence of knowledge or notice of the adjudication, proceed to judgment in an action begun in the state court unless prosecution thereof is stayed by the bankruptcy court. Boynton v. Ball, 121 U. S. 457, 7 S. Ct. 981, 30 L. Ed. 985. Here the act positively forbids the taking of any judgment after the date of filing of the petition. No stay of proceedings in the state court was necessary. No notice of filing of the petition was necessary, although notice was actually given. The statute gives the court absolute control over the debtor and his property, and the latter is in the custody of the court. Surely the court cannot permit any act to be done which will interfere with the property in its custody or will make impossible the carrying out of the purposes of the act. In this case we have the added fact that the Bank of Ellicottville appeared before the conciliation commissioner, took part in the proceedings at the meeting of creditors, noted its claim, and submitted itself and its claim to the jurisdiction of this court. The court has power, and it is its duty, to take such action as may be necessary to make effective the compromise as confirmed.

The motion is granted, and the Bank of Ellicottville and John W. Ellis will be directed to forthwith remove the judgment in question from the records of the Cattaraugus county clerk's office or otherwise remove the same as an apparent lien or cloud on the debtor's property. So ordered.