280 P.2d 971

A. E. UPTON, Appellant,

v.

HEISELT CONSTRUCTION COMPANY, L. H. Heiselt and Annie Ray Heiselt, Administratrix of the Estate of L. H. Heiselt, Deceased, Respondents.

No. 8240.

Supreme Court of Utah.

March 9, 1955.

172

Wm. J. Christenson, Charles Welch, Jr., Salt Lake City, for appellant.

Brigham E. Roberts, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from an order staying execution on a judgment. Affirmed. Costs to respondent.

Defendant Heiselt endorsed a 2-year note dated May 15, 1935. In 1940 he filed for bankruptcy in Colorado and was adjudicated a bankrupt in 1941. Between times Heiselt unsuccessfully sought the bankruptcy court's assumption of jurisdiction to the exclusion of the Utah court, the former taking the position that the Utah court had plenary adjudicative powers over the matter with which the bankruptcy court was disinclined to interfere,—a conclusion we consider within the province of the bankruptcy court, and proper in this case. The Utah judgment was appealed here [1] and while the matter was pending, Heiselt received his bankruptcy discharge in January, 1949, the judgment appealed to this court being affirmed in June, 1949. Heiselt died in 1951. A Colorado probate court appointed a representative for Heiselt's estate, which representative dishonored the claim based on the judgment which plaintiff filed in the probate matter. In 1952, an ancillary representative appointed in Utah, displayed the bankruptcy discharge and on motion obtained an order from the Utah court staying execution on the judgment.

Plaintiff assails the motion for stay, claiming 1) the claim was not scheduled in the bankruptcy proceeding and hence was not dischargeable, 2) the Colorado probate court had jurisdiction of the claim to the exclusion of the Utah court, 3) the claim was not provable, and 4) the defendant was estopped from asserting the discharge as a

1. 116 Utah 83, 208 P.2d 945.

defense since he had not asserted it previously in the Utah action.[2]

██ As to the contention that the claim had not been scheduled and hence was not dischargeable, we are convinced that, even though much of the evidence is in conflict, and in view of the fact that we are bound to affirm the lower court's findings if, viewing the evidence in a light most favorable to the successful litigant, there be substantial evidence to support the finding, there was sufficient evidence to conclude, as did the trial court, that plaintiff had actual knowledge of the bankruptcy proceedings within the time required to file claims,—such knowledge being an alternative to scheduling of claims as would discharge a provable claim.[3]

The following facts, among others, support the trial court's finding: Plaintiff bank president, supervised a $12,000 loan to Heiselt. He discussed it with the latter periodically through 1940. Heiselt filed for bankruptcy in October 1940, scheduling both the $12,000 item and a $30 claim which plaintiff personally had against him. Notices to creditors were mailed and received by at least some creditors in November 1940. Early in January 1941, plaintiff went to California and returned before June, 1941. The official bankruptcy record showed one Moses, an attorney, as representing the plaintiff, who denied such authority. Plaintiff's brother, another bank official, checked the bankruptcy record and reported the scheduling of the bank's claim and the $30 claim to plaintiff, who remarked that Heiselt owed him more than that. The $12,000 claim was discussed at directors' meetings attended by plaintiff, which meetings customarily were held monthly. On his return from California, plaintiff learned that the bank officials had checked the bankruptcy matter, and he testified that they "may have told me the first day I was here and they may not have told me for a month." Moses, the attorney, did not claim or disclaim any authority to represent plaintiff, but stated that "it has never been our practice to enter any appearance without some authority to do so," suggesting also that authority may have been given by mail since destroyed. All testimony pertained to 13-year old facts, and apparently because of the time lapse, none of the witnesses would pinpoint dates, nor would any deny any fact that might have occurred during a period vital in this case.

---

2. Plaintiff did not make this last contention a part of his Statement of Points, though he argued it in his brief. Although the case may differ somewhat in fact, the answer to such contention seems to be found in Boynton v. Ball, 121 U.S. 457, 7 S.Ct. 981, 984, 30 L.Ed. 985, where it was pointed out that one deliberately might not list a particular claim 1) thinking he has a complete defense thereto, 2) because he wishes to have the claim reduced to a sum certain to assure full discharge,—failure to assert the bankruptcy as a defense not being fatal to a later successful assertion of a discharge that postdates the judgment.

3. 11 U.S.C.A. § 35, sub. a (3); Harris v. Butler, 91 Utah 11, 63 P.2d 286.

174

■ From such facts it seems reasonable to conclude that the trial court did not act arbitrarily, capriciously or without reasonable support in fact, when it determined that plaintiff had actual knowledge of the bankruptcy within the time required to file claims, or to conclude that defendant, whose duty it was to prove such knowledge,[4] had sustained such burden.

As to plaintiff's contention that the Colorado probate court had jurisdiction of the claim to the exclusion of the Utah court, we agree only insofar as such court might receive the claim based on the Utah judgment, and approve or dishonor it, in which latter event most certainly there would be a right of appeal. To say that filing the claim invested the Colorado probate court or any other Colorado court with the right arbitrarily to ignore the Utah judgment would be to flout constitutional full faith and credit guarantees.

■ In contending for the exclusiveness of the Colorado court's jurisdiction, plaintiff adverts to the principle that a court first acquiring jurisdiction and having plenary power to adjudicate all matters relating to an action, has continuing jurisdiction to pursue the matter to finality to the exclusion of other courts,[5] concluding that as an adjunct to such principle that two actions between the same parties based on the same cause of action cannot co-exist in two different courts. We cannot accept such contention as it might apply to the circumstances of this case, nor the arguments assigned in support thereof, for the following reasons: 1) Such contention assumes that the Colorado court was the first court to acquire jurisdiction of the matter, when the fact is that the Utah Court first assumed such jurisdiction, justifying the conclusion that, applying plaintiff's own test, the Utah court had jurisdiction to deal with the judgment, including the stay of execution thereof; 2) that although plaintiff's contention that two identical actions between the same parties cannot co-exist in different courts generally is true, there is an established exception thereto, where such actions are initiated first in one state then in another, or in a state court then in a federal court or vice versa, in which cases it is held generally that, although the first action filed should be pursued to finality, such identical actions can co-exist in different states, or in a state and federal court, provided, however, that a judgment in one may be pleaded in bar or in abatement to the other;[6] and 3) that plaintiff's contention assumes that there are two identical actions between the same parties in different jurisdictions in our present case, when in

4.  Kobebell v. Diers Bros. & Co., 87 Colo. 67, 285 P. 165.

5.  21 C.J.S., Courts, § 492, page 745 and 14 Am.Jur. Sec. 243, p. 435 et seq. cited by plaintiff.

6.  14 Am.Jur. Sec. 246, p. 440; 19 A.L.R. 2d 301.

fact such contention does not appear to be accurate, since a) the Utah litigation represents an action on a note, where the merits of or the defenses to it were issuable and merged in the judgment which itself constituted a new cause of action,—all of which constituted a true adversary proceeding,—while b) the Colorado probate proceeding, not a true adversary proceeding, represents a situation where the court could receive, then accept or reject a claim based on a judgment, but behind which it could not go to determine the merits of or defenses to the original cause, unless, as does not appear to be the case here, there be a real question as to the validity of the judgment, in which event such validity of the judgment and a full faith and credit question would have to be tested in a proceeding in which defendant would be a party, and in which the merits or defenses extant in the original cause would not be determinable.

Whatever interpretation is given to the two proceedings, it is our studied conclusion that the discharge in bankruptcy, properly presented to the Utah court, justified that court in staying execution of the judgment, a result quite in harmony with the letter, and spirit of the bankruptcy act and the authorities generally applicable to circumstances similar to those found here.

The argument that plaintiff's claim was not provable is unsupportable, since it was a fixed liability in 1937 and so being, is provable,[7] as it was also as a claim against an endorser.[8]

McDONOUGH, C. J., and CROCKETT, WADE and WORTHEN, JJ., concur.

7. 11 U.S.C.A. § 103.

8. Maynard v. Elliott, 283 U.S. 273, 51 S. Ct. 390, 75 L.Ed. 1028.