**In re RICHARD A. TURNER CO., INC., Alleged Debtor.**

**Bankruptcy No. 96–42368–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

June 9, 1997.

Aaron D. Krakow, Feinberg, Charnas & Birmingham, P.C., Boston, MA, for Creditors.

Maurice M. Cahillane, Egan, Flanagan & Cohen, P.C., Springfield, MA, for Debtor.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

This involuntary Chapter 7 case is before the Court upon a petition filed by the Trustees of the International Brotherhood of Electrical Workers Local No. 7 Annuity Fund (the "Annuity Fund"), the Trustees of the International Brotherhood of Electrical Workers Local No. 7 Pension Fund (the "Pension Fund"), and the Trustees of the International Brotherhood of Electrical Workers Local No. 7 Health & Welfare Fund (the "Health & Welfare Fund") (collectively the "Funds" or "Petitioning Creditors") seeking an order for relief against Richard A. Turner Co., Inc. (the "Debtor"), pursuant to 11 U.S.C. § 303. The Debtor has contested the involuntary petition on the grounds that the Petitioning Creditors are not each the holder of a claim as required by § 303(b)(1).

### I. Facts

The parties stipulated to the following facts.

The Debtor is an electrical contractor and a member of the Western Massachusetts Chapter of the National Electrical Contractors Association ("NECA"). As a result, the Debtor was subject to a collective bargaining

agreement between NECA and the International Brotherhood of Electrical Workers Local Union No. 7 (the "Union"). Under this agreement, the Debtor was obligated to pay to each of the Funds certain percentages of the wages the Debtor paid to its employees.[1]

Although each Fund is governed by a separate trust agreement and declaration of trust, and has its own board of trustees, the Funds coordinate their collection activities against delinquent contractors through a collection committee. Through this committee, the Funds brought a consolidated action against the Debtor in the United States District Court for the District of Massachusetts for monies due under the collective bargaining agreement. On June 13, 1994, the district court entered a default judgment for the Funds in the amount of $617,480.77.

On May 3, 1996, the Funds filed the instant involuntary petition. The Debtor filed an answer to the petition which asserted in relevant part; "The Debtor denies that there are three or more actual entities each of which is a holder of a claim against it, and states that the [Petitioning Creditors] are actually one entity." After a pre-trial hearing, the Court scheduled the matter for an evidentiary hearing. At the evidentiary hearing, the parties presented to the Court a set of stipulated facts and memoranda of law where upon the Court took the matter under advisement.

## II. Positions of the Parties

The Debtor moves to dismiss the involuntary petition on the grounds that the petition was not brought by three creditors each of which is a holder of a claim. Specifically, the

Debtor contends that even though there are three funds, there is essentially only one claim because the obligation to the Funds arises from a single collective bargaining agreement. Additionally, the Debtor argues that since the district court awarded the Petitioning Creditors a single judgment in one sum for the three Funds, there is just one claim.

The Petitioning Creditors argue that since the collective bargaining agreement provides for three separate and distinct payments to three separate and distinct funds, the Petitioning Creditors are three creditors with three different claims.

## III. Discussion

Section 303(b) specifies who may file an involuntary petition.[2] When a debtor has twelve or more creditors, an involuntary case may be commenced only by three or more entities. 11 U.S.C. § 303(b)(1). In addition, each entity must be the holder of a claim against the debtor that is not contingent as to liability or the subject of a bona fide dispute. Id.

It is undisputed that the Petitioning Creditors are three separate entities. Pursuant to 11 U.S.C. § 101(15), the definition of an entity includes a trust. Each of the Petitioning Creditors is a trust created by a separate trust agreement and declaration of trust. Thus, the only issue to be determined is whether each of the Petitioning Creditors is a "holder of a claim" as required by § 303(b)(1).

A claim is defined under 11 U.S.C. § 101(5) as a "right to payment, whether or

---

1. Section 6.02 of the collective bargaining agreement provides in relevant part:

   It is mutually agreed between the parties here that the Employer will contribute the amounts set forth in Section 3.05 of this Agreement for each hour worked and will remit such amount to the Trustees of the Health & Welfare Fund established by the Trust Agreement and Declaration of Trust not later than fifteen (15) calendar days following the end of each calendar month in which the work was performed.

   Sections 6.03 and 6.04 of the collective bargaining agreement contain identical provisions for the Pension Fund and the Annuity Fund respectively.

2. 11 U.S.C. § 303(b) provides in relevant part:

   An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

   (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Nevertheless, for purposes of § 303(b)(1), courts have held that a joint right to payment constitutes a single claim. *E.g., In re T.P. Herndon & Co.,* 87 B.R. 204, 205 (Bankr.M.D.Fla.1988) (note payable to single entity in which various parties held an interest constituted one claim); *In re Averil, Inc.,* 33 B.R. 562, 563 (Bankr.S.D.Fla. 1983) (joint payees on a note held one claim); *In re McMeekin,* 16 B.R. 805, 809 (Bankr.D.Mass.), *reh'g denied,* 18 B.R. 177 (Bankr.D.Mass.1982); *see 2 Collier on Bankruptcy* § 303.04[7] (15th ed. rev.1996) (joint holders of an obligation should be scrutinized carefully for counting purposes). *But see In re Hopkins,* 177 B.R. 1 (Bankr. D.Me.1995) (requirements of § 303(b)(1) satisfied where wife and three children had a right to payment for child support). For example, in *McMeekin,* the obligation at issue arose from a note in which the payees were listed in the conjunctive. The court concluded that because there was but one right to payment there could only be one claim. The court explained:

A note which purports to be a promise to repay a fixed sum to two named payees, and which refers to the payees in the conjunctive, is nevertheless a single promise to pay. It creates a single right to payment, which may be shared jointly by the payees, and which may be enforced only by both payees. 16 B.R. at 809.

As a result, the court held that, although two of the petitioning creditors constituted separate entities, each was not the holder of a claim. *Id.; accord T.P. Herndon,* 87 B.R. at 205; *Averil,* 33 B.R. at 563.

■ The instant case is distinguishable from *McMeekin.* In *McMeekin* the debtor had one obligation to pay one sum to two

payees. 16 B.R. at 809. In contrast, the collective bargaining agreement at issue here contains three separate provisions creating separate obligations for different sums to each of the Petitioning Creditors. Therefore, although there is only one collective bargaining agreement, the agreement itself creates three distinct and independent obligations. Consequently, each Petitioning Creditor is a holder of a claim for the amount it is owed under the collective bargaining agreement[3] *See Subway Equip. Leasing Corp. v. Sims (In re Sims),* 994 F.2d 210, 219 (5th Cir.1993) (affiliated creditors were qualified to file involuntary petition pursuant to § 303(b)(1) where debtor voluntarily entered into separate contracts with each creditor).

The fact that the district court entered a single judgment in favor of the Petitioning Creditors does not change this result. The Debtor argues that because the Petitioning Creditor's claims were reduced to one judgment, with the full amount in favor of all three Petitioning Creditors, there is only one claim. This theory was adopted by the court in *In re Atwood* which found that when separate claims held by two creditors were reduced to a joint judgment there was a single claim for purposes of § 303(b)(1). 124 B.R. 402 (S.D.Ga.1991); *see In re Ross,* 63 B.R. 951, 967 (Bankr.S.D.N.Y.1986) (where creditors held separate, non-overlapping judgments in addition to joint judgment they count as two petitioners). The *Atwood* decision relied on *McMeekin* and its progeny. *Id.* at 409. However, those joint payee cases are not dispositive with respect to a joint judgment. First, in the joint payee cases the creditors held undivided interests in promissory notes. *See T.P. Herndon,* 87 B.R. at 205; *Averil,* 33 B.R. at 563; *McMeekin,* 16 B.R. at 809. But in the instant case, the Petitioning Creditors held separate claims, thus the judgment is easily divisible. *See*

---

**3.** Although this is an issue of first impression, several cases decided pursuant to 11 U.S.C. § 303(h)(1) offer some support for this Court's position. In *Cardon Realty Corp. v. Teamsters Pension Trust Fund (In re Cardon Realty Corp.),* 124 B.R. 630, 634 (W.D.N.Y.1991) and *In re Garland Coal & Mining Co.,* 67 B.R. 514, 522 (Bankr.W.D.Ark.1986), the courts held that pensions funds, similar to the Funds in the instant

case, constituted separate creditors with separate debts for purposes of determining whether the debtor was not paying its debts as they became due. *See also In re Central Hobron Assoc.,* 41 B.R. 444, 449 n. 4 (D.Haw.1984) (though court held that related entities were one creditor with one debt for purposes of § 303(h)(1), it noted that the entities would not be combined under § 303(b)).

*McMeekin,* 16 B.R. at 809 (discussing fact that joint claim on note was not severable).

Secondly, the entry of a judgment does not prohibit the court from looking behind the judgment to determine the nature of the debt. It has been said "a debt on which judgment was rendered is the same debt that it was before; that, notwithstanding the change in its form from that of a simple contract debt, or unliquidated claim, or whatever it character may have been, by merger into a judgment of a court of record, it still remains the same debt on which the action was brought...." *Boynton v. Ball,* 121 U.S. 457, 466, 7 S.Ct. 981, 983, 30 L.Ed. 985 (1887); *see Cutler v. Lindsey (In re Lindsey),* 199 B.R. 580, 583 (E.D.Va.1996) ("the court may look behind the judgment to determine the essential nature of the liability for purposes of proof and allowance") (quoting *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.* 249 F.2d 221, 223 (2d Cir.1957)); *Leman v. Locke,* 240 Mass. 551, 554, 134 N.E. 343, 344 (1922) (the nature and character of an original debt provable in bankruptcy are not changed by merger in a judgment).

For example, bankruptcy courts have consistently held that a judgment does not prohibit the court from examining the underlying claim for purposes of determining dischargeability. *E.g., Swate v. Hartwell (In re Swate),* 99 F.3d 1282, 1289 (5th Cir.1996) (reducing alimony obligations to judgment does not change the substance of the liability for purposes of dischargeability); *Sadowsky v. Larson (In re Larson),* 169 B.R. 945, 953 (Bankr.D.N.D.1994) (money judgment does not alter nature of debt from nondischargeable support obligation to dischargeable debt); *Afsharnia v. Roland (In re Roland),* 65 B.R. 1003,1005–06 (Bankr.D.Conn.1986) (merger of original debt with subsequent judgment debt did not prevent court from considering circumstances surrounding loan to determine whether debtor had made materially false statements respecting financial condition). Similarly, the court may examine an underlying claim to determine the amount of the judgment which is allowable under the Code. *Lindsey,* 199 B.R. at 583–84 (court may look behind judgment to determine al-lowable amount of lessor's claim for damages under § 502(b)(6)); *Kohn v. Leavitt–Berner Tanning Corp.,* 157 B.R. 523, 526 (N.D.N.Y. 1993) (same); *In re Bus Stop, Inc.,* 3 B.R. 26 (Bankr.S.D.Fla.1980) (same).

Finally, the Code broadly defines the term "claim." *See* S.Rep. No. 95–989, at 21 (1978) (describing definition of claim as permitting "the broadest possible relief in the bankruptcy court" and noting that the Code "contemplates that all legal obligations of the debtor ... will be able to be dealt with in the bankruptcy case."); *accord* H.R.Rep. No. 95–595, at 309 (1977). Moreover, a claim exists "whether or not it is reduced to judgment." § 101(5); *see Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990) (the modifying language "whether or not such right is ... "reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim").

Since § 303(b)(1) requires only that each of the petitioning creditors be a holder of a claim, and since nothing prevents the Court from looking behind the judgment to determine whether creditors in fact hold three separate claims, the fact that unrelated debts have been reduced to a single judgment should not preclude each of the creditors from qualifying as a holder of a claim for the amount each is owed. The Court holds that a single judgment encompassing individual claims does not merge those claims for purposes of § 303(b)(1).

## IV. Conclusion

Each of the Petitioning Creditors is a holder of a claim. There being no other contested issues, the order for relief under Chapter 7 of the Bankruptcy Code should enter.