In re MID–AMERICA INDUSTRIAL, INC., Debtor.

Bankruptcy No. 98 B 06413.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

May 27, 1999.

Kevin P. McJessy & Amy S. van Gorp, Lord Bissell & Brook, Chicago, IL, for Plaintiff.

Robert A. Filpi, Stack & Filpi, Chicago, IL, for Defendant.

William Grabscheid, Chicago, IL, Chapter 7 Trustee.

## MEMORANDUM OPINION ON INVOLUNTARY PETITION AND ORDER FOR RELIEF

JACK B. SCHMETTERER, Bankruptcy Judge.

This bankruptcy case was started on March 2, 1998, by filing of an involuntary petition against Mid–America Industrial Inc. ("Mid–America" or "Debtor") under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* The petition was filed by the Chicago District Council of Carpenters Pension Fund ("Pension Fund"), Chicago District Council of Carpenters Welfare Fund ("Welfare Fund"), and Chicago District Council of Carpenters Apprentice and Trainee Program Fund ("Trainee Program Fund") (collectively "Petitioning Creditors" or "Trust Funds"). Debtor objected to the involuntary petition arguing that Debtor had more than twelve creditors, yet fewer than three creditors had filed the involuntary petition. An evidentiary hearing was held on the petition and an Order for Relief was entered wherein the court determined that the Petitioning Creditors constituted three separate entities holding claims against Mid–America. That Order provided for a written opinion to be subsequently entered setting forth more fully reasons for that determination.

This opinion will stand as Findings of Fact and Conclusions of Law following the hearing that was held.

## BACKGROUND FACTS

On March 2, 1998, the Petitioning Creditors filed an involuntary Chapter 7 bankruptcy petition against Debtor, a now dissolved corporation. Mid–America did not contest that it is a "person" against whom an order for relief may be entered, and it admitted that it was generally not paying its debts as they became due. Debtor's Proposed Findings at ¶ 3. However, Mid–America alleged and argued that the Petitioning Creditors, even if they are separate legal entities, are joint holders of a single claim. Debtor's counsel did concede at the hearing that, if the three funds had brought three separate lawsuits and received three separate judgments, there would be sufficient petitioning creditors to file this involuntary because the three funds are indeed separate legal entities.

The Pension Fund, Welfare Fund and Trainee Program Fund are multi-employer funded trust funds that provide pension, welfare, and training benefits to members of the Chicago and Northeast Illinois District Council of Carpenters ("Council") and affiliated or local unions under its jurisdiction in Cook, Lake, and DuPage Counties (collectively "Union").

The Trust Funds' claims against Mid–America arose under a Collective Bargaining Agreement ("CBA") signed by the Debtor on February 2, 1994. Under the CBA, Debtor agreed to make certain contributions to several trust funds with respect to hours worked by employees covered by the CBA. Three of these funds are the Petitioning Creditors. Payments due to the funds were collected in a single monthly billing in which Mid–America accounted for each hour worked by each covered employee and was obligated to pay a certain amount to each fund for each hour of work.

The Petitioning Creditors (Pension Fund, Welfare Fund, and Trainee Program Fund) are three separate and independent trust funds created, organized, administered, and governed by three separate trust agreements. The Pension Fund was created by the Trust Agreement dated January 29, 1974; the Welfare Fund was created by the Trust Agreement of the Chicago District Council of the United Brotherhood of Carpenters and Joiners of America and Builder Foundation of Chicago; the Trainee Program Fund was created by the Chicago District Council of Carpenters Apprentice and Trainee Program Trust Agreement. The Pension Fund, Welfare Fund, and Trainee Program Fund have three separate taxpayer identification numbers (366130207, 362229735, and 366128101 respectively). The three funds do not intermingle funds, and they each maintain separate accounting records. In addition, each fund has a separate board of trustees.

The three funds coordinate their collection activities against delinquent contractors through a Collection Committee. The purpose of coordinating these activities is to avoid the duplication of costs. The Collection Committee retains counsel who is directed to consolidate the causes of action by different funds into one suit against a delinquent contractor. Although the funds file such consolidated causes of action, the Collection Committee's policy and its direction to its counsel is that none of the funds are to receive from any recovery an amount other than the amounts provided due to each under its respective Trust Agreement and the CBA. If the Collection Committee obtains a consolidated judgment against an employer and recovers the full amount owed, it distributes the recovered funds to each of the Trust Funds in accordance with terms of the CBA and the Trust Agreements. If the Collection Committee collects only a portion of a consolidated judgment against a delinquent employer, it holds that portion in escrow until either the judgment is satisfied in full or until the Collection Committee determines that further collection efforts would be futile. When only a part of a judgment is collected and the Collection Committee determines that further collection efforts would be futile, the funds collected are distributed to the three funds in direct proportion to the amount each is entitled to receive under its respective Trust Agreements and the CBA. None of the Trust Funds may collect more than the amount each is entitled to receive.

As pertains to this Debtor, the Collection Committee determined that Mid–America owed each of the Trust Funds for unpaid contributions. Therefore, the Trust Funds brought a single consolidated lawsuit against Mid–America. On June 12, 1995, the Petitioners filed a one-count complaint before the District Court in this District against Mid–America alleging failure to make trust fund payments ("1995 Complaint"). The 1995 Complaint made no effort to segregate the debt due to each fund and sought a single recovery for all three plaintiffs. The complaint alleged

that "Defendant owes at least $16,293.58 to the Trust Funds." It was not possible to determine from that complaint (which was in evidence) what, if any, individual claims the plaintiffs were making in that suit or how much each might have sought individually.

The plaintiffs in the 1995 Complaint moved for summary judgment. Neither that motion nor its supporting papers indicated that the plaintiffs might actually be advancing three separate claims or the amounts of such individual claims. The summary judgment motion sought a single amount for unpaid contributions, a single amount for penalties, a single amount for interest, and a single amount for attorneys fees and costs. The Trust Funds' motion did not break down the amounts owed to the Pension Fund, the Welfare Fund and the Trainee Program Fund. Nor did the moving papers refer to paragraphs of the CBA that require contributions in different amounts.

On April 5, 1996, summary judgment was entered on the 1995 Complaint against Mid–America, a judgment that set forth a single amount in favor of all the plaintiffs. The Trust Funds thereby obtained a single judgment against Mid–America in the amount of $27,618.98, of which they now allege $15,943.65 remains unsatisfied. Specifically the trust funds allege here that the Welfare Fund is owed $8,731.23, the Pension Fund is owed $4,663.15, and the Trainee Program Fund is owed $2,549.27. However, these amounts cannot be determined by anything contained within the 1995 Complaint or summary judgment papers or judgment thereon.

On June 20, 1996, the same plaintiffs brought a second complaint against Mid–America for unpaid contributions for a subsequent period and for additional covered employees ("1996 Complaint"). The

1996 Complaint (also in evidence) was also captioned with names of the three funds as plaintiffs, but failed to provide any express differentiation as to the nature of separate claims or as to amounts sought by each of the separate plaintiffs. A single judgment was entered on the 1996 Complaint in favor of plaintiffs. The Trust alleges that the full award of $28,170.12 remains outstanding and that the Welfare Fund is owed $18,495.07, the Pension Fund is owed $7,592.90, and the Trainee Program is owed $2,082.15.

Even though the judgment on the 1996 Complaint did not in the pleading expressly break down the Trust Funds' suit into three separate claims, there were two exhibits to that Complaint (Exhibits B and C) thereto that did provide a formula for breaking down the claim into separate claims. The Complaint Paragraph 11 provided that "... defendant owes $12,415.12 for contributions as reflected on the reports submitted. The defendant owes more than $18,200.03 total for contributions, interest and liquidated damages accrued on the contributions reflected on the reports submitted. (See Calculations, attached as Exhibit B and Reports, attached as Exhibit C)." Exhibit B showed the total amount of contributions owing for each month from February 1995 through April 1996 plus liquidated damages and interest for each month. Exhibit C to the 1996 Complaint comprised monthly Fund reports which showed the hourly rate applied per fund.

For example, the total amount due for the month of February 1995 was $6,910.40. The total number of hours worked was 1120. The applicable contribution rate to the Welfare Fund was 4.380, the contribution rate to the Pension Fund was 1.580, and the contribution rate to the Trainee Program Fund was 0.170.[1] Thus, the to-

1. In addition, there were three other funds which also receive contributions which are not a part of this action. The M.C.I.A.F. Fund received 0.020, the Safety Council Fund received 0.10, and the CISCO Fund received 0.010. The total contribution due all six funds was 6.170. In addition, the applicable contribution rate changed in May 1995 to 4.380 to the Welfare Fund, 1.800 to the Pen-

tal amount due the Welfare Fund in February 1995 was $4,905.60, the total amount due the Pension Fund during that same period was $1,769.60, and the total amount due the Trainee Program Fund for February 1995 was $190.40. All this can be determined using the 1996 Complaint and its attached exhibits. Thus, one can calculate with little effort the amount of separate debt due each of the individual funds.

The Debtor ceased operating in 1996 and had outstanding debts due to at least 17 individual creditors when it closed. The Petitioning Creditors do not dispute that Mid–America has 12 or more creditors holding undisputed claims that are not subject to any bona fide dispute. No evidence was presented to show that any of those creditors have been paid.

## JURISDICTION

This matter is properly before the Court pursuant to 28 U.S.C. § 157, Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois, 28 U.S.C. § 1334, and 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(O). The involuntary petition initiated a contested matter within the meaning of Bankruptcy Rule 9014.

## DISCUSSION

■ Pursuant to the applicable part of 11 U.S.C. § 303(b), where a debtor has twelve or more creditors, an involuntary petition may be commenced by the filing of a Chapter 7 or Chapter 11 petition with the bankruptcy court "... by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute...." 11 U.S.C. § 303(b)(1). Thus, given the number of creditors herein, § 303 requires not only that there be three creditors, but that each of the three creditors hold a separate claim.

■ Based on evidence produced at the hearing, the Welfare Fund, the Pension Fund and the Trainee Program Fund are legally separate entities. Each is administered separately with separate books, separate taxpayer identification numbers, and separate trustees. Although the three funds merge their collection activities, they are three separate entities for purposes of § 303. Thus, the only serious question was whether the two judgments that the three funds received jointly constituted or included three separate claims.

A claim is defined as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5)(a). Several courts have held that joint holders of an obligation are counted as one creditor. *See In re McMeekin,* 16 B.R. 805, 809, *reh'g denied,* 18 B.R. 177 (Bankr.D.Mass.1982) (looking to Massachusetts law which states that a promissory note made payable to two or more individuals is enforceable only by all of them); *In re Averil, Inc.,* 33 B.R. 562, 563 (Bankr.S.D.Fla.1983) (concluding joint holders of promissory note constituted single creditor); *In re T.P. Herndon and Co.,* 87 B.R. 204, 206 (Bankr.M.D.Fla.1988) (finding because promissory note was made payable to single entity, a probate estate, petitioning creditors held single right to payment constituting only one claim for purposes of § 303(b) even though note had been assigned to heirs); *In re Atwood,* 124 B.R. 402, 409 (S.D.Ga.1991) (affirming unpublished bankruptcy decision holding joint holders of judgment constitute single creditor for purposes of § 303(b)). With the exception of *Atwood,* which affirmed the bankruptcy judge with little discussion of whether joint holders of a judgment constitute a single claim, the other cited cases dealt with the Uniform Commercial Code which basically states that an instrument payable jointly to two

sion Fund, and 0.150 to the Trainee Program Fund.

or more persons may only be enforced by all of them. Thus, the courts determined that, as all the payees to the jointly payable promissory note would be required to enforce their note, that note would only constitute a single claim in bankruptcy, not separate claims under § 303.

The evident purpose in requiring at least three creditors with three claims (unless the debtor has less than a dozen creditors) is to require at least some joint effort to launch an involuntary proceeding. If the co-owners of a single obligation qualify as separate claimants for this purpose, that legislative purpose would be frustrated.

*Averil,* 33 B.R. at 563.

However, the facts of this case closely follow the facts in *In re Richard A. Turner Co., Inc.,* 209 B.R. 177 (Bankr.D.Mass. 1997), and that is the better reasoned and more applicable opinion. The debtor in *Turner* was obligated under a collective bargaining agreement to pay to each of three funds, the International Brotherhood of Electrical Workers Local No. & Annuity Fund, Pension Fund, and Health and Welfare Fund, certain percentages of the wages the debtor paid to its employees. The debtor failed in this obligation. As in the present case, while the three funds were governed by separate agreements and had separate trustees, the funds coordinated their collection activities and brought a consolidated action against the debtor in federal court. The court entered a default judgment in favor of the funds in the amount of $617,480.77. Subsequently, the funds filed an involuntary petition against the debtor. The debtor filed an answer to the petition asserting that the funds held a single claim and the petition should be dismissed. *Id.* at 177–78.

The *Turner* opinion distinguished the situation in that case from that in *Herndon, Averil,* and *McMeekin.*

In *McMeekin* the debtor had one obligation to pay one sum to two payees. In contrast, the collective bargaining agreement at issue here contains three separate provisions creating separate obligations for different sums to each of the Petitioning Creditors. Therefore although there is only one collective bargaining agreement, the agreement itself creates three distinct and independent obligations. Consequently, each Petitioning Creditor is a holder of a claim for the amount it is owed under the collective bargaining agreement

*Turner,* 209 B.R. at 179 (citations omitted).

The CBA executed by Mid–America in this case is quite similar to the document involved in *Turner.* The document in this case contains separate provisions creating separate obligations for different sums to the Pension Fund, the Welfare Fund, and the Trainee Program Fund. Thus, each of the Petitioning Creditors holds a unique claim for the amount it is owed under the CBA. The presence of a single judgment recognizing these obligations does not alter the result. The *Turner* decision found that the judgment was easily divisible, whereas in the joint payee cases such as *McMeekin,* the creditors held undivided interest in promissory notes.

Moreover, the 1996 Complaint did present separate claims on the record presented. As noted above, while the judgment on the 1996 Complaint did not on its face indicate separate amounts for the three Petitioning Creditors, the 1996 Complaint did show that it sued on three separate claims and provided a relatively simple formula for dividing the pleaded *ad damnum* into amounts due to each of the plaintiffs there who are the Petitioning Creditors here. The judgment entered on the 1996 Complaint is thereby easily divisible.

The 1995 Complaint had no such exhibits attached, and thus the judgment on that complaint is not easily divisible, though the CBA shows that separate obligations were due. However, judgment on the 1996 Complaint clearly was based on separate claims, not on a jointly held claim. Accordingly, the Petitioning Creditors do

constitute three creditors each with a separate claim against the Debtor in bankruptcy.

The legal doctrine of merger does not alter the result. That doctrine is discussed at § 18 of the Restatement (Second) of Judgments. It provides that when a final judgment is rendered in favor of a plaintiff, the plaintiff cannot subsequently maintain an action on the original claim, but only upon the judgment because the claims merge into the judgment. Section 18 further provides that in such an action upon the judgment, the defendant cannot use defenses he might have used or did use in the first action. Debtor therefore argued that whatever claims Petitioning Creditors "had prior to judgment, such claims have merged into the final judgment." Mid–America's Memorandum of Points and Authorities at 7.

However, the CBA gave each of the three funds a separate obligation; the judgment could not change that.

> It has been said "a debt on which judgment was rendered is the same debt that it was before; that, notwithstanding the change in its form from that of a simple contract debt, or unliquidated claim, or whatever its character may have been, by merger into a judgment of a court of record, it still remains the same debt on which the action was brought...."

*Turner*, 209 B.R. at 180 (quoting *Boynton v. Ball*, 121 U.S. 457, 466, 7 S.Ct. 981, 983, 30 L.Ed. 985 (1887)).

 Mid–America also argued that the conduct of Petitioning Creditors during the 1995 and 1996 lawsuits "constitutes a judicial admission that there is only one claim." Mid–America's Memorandum of Points and Authorities at 6 (citing *Keller v. United States*, 58 F.3d 1194, 1198–99 (7th Cir.1995)). However, no evidence was presented at trial as to this alleged judicial admission except for the complaints themselves. Moreover, judicial admissions are formal concessions in the pleadings that withdraw a fact from contention. *Id.* at n.

8. The two complaints did not in any way concede that the plaintiffs there lacked individual claims to portions of the *ad damnum* sought in each case.

## CONCLUSION

For reasons and pursuant to authorities discussed above, and pursuant to the order for relief entered on January 4, 1999, it has been held that the Chicago District Council of Carpenters Pension Fund, Chicago District Council of Carpenters Welfare Fund, and Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program Fund are three separate entities each holding separate claims against Mid–America Industrial, Inc. as required by 11 U.S.C. § 303(b). Thus, the order for relief was appropriately entered.