**In re James P. ATWOOD, Debtor.**

**Charles SIPPLE III., and Joel Gibson, Appellants,**

v.

**James P. ATWOOD, Appellee.**

**Bankruptcy Nos. CV 490–111, 88–41165.**

United States District Court,
S.D. Georgia,
Savannah Division.

Feb. 12, 1991.

Kathy Horne, J. Hamrick Gnann, Jack K. Berry, Savannah, Ga., Asst. U.S. Trustee Office.

Walter C. Hartridge, Roy E. Paul, Savannah, Ga., for appellee/debtor.

EDENFIELD, Chief Judge.

The appellants have moved the Court to reconsider its December 7, 1990 order, which affirmed the bankruptcy court's order granting summary judgment for the debtor and dismissing the case. The appellant's motion has merit. Accordingly, the December 7, 1990 order is VACATED. The bankruptcy court's decision is AFFIRMED IN PART AND VACATED IN PART. The case is remanded to the bankruptcy court, as explained below.

## BACKGROUND

The appellants, Charles Sipple III, ("Sipple") and Joel Gibson ("Gibson"), are creditors of the appellee-debtor, James P. Atwood ("Atwood" or "debtor") by virtue of a judgment entered in their favor, jointly, by the Superior Court of Chatham County. Sipple and Gibson sued Atwood and several other defendants in the Superior Court of Chatham County, on claims arising out of a joint venture arrangement. Michael J. Gannam ("Gannam") performed services as an auditor in that action, and the Superior Court ordered Atwood to compensate him for those services. On June 17, 1986, the Superior Court entered judgment in favor of Sipple and Gibson against the defendants, jointly and severally. As the bankruptcy court noted, the auditor's report suggests that Gibson and Sipple shared one claim in the Superior Court, and Gibson

had another, separate claim. Nevertheless, the Superior Court judgment reduced these claims into one judgment, with the full amount in favor of both Gibson and Sipple.

Sipple, Gibson, and Gannam commenced this involuntary bankruptcy proceeding pursuant to 11 U.S.C. § 303(b) in October 1988. On May 8, 1989, Atwood filed a motion for summary judgment. The bankruptcy court granted the summary judgment motion and dismissed the case on January 29, 1990.

Sipple and Gibson have appealed that order. Although the Court originally rejected their contentions and affirmed the bankruptcy court's decision, the Court will now reconsider that decision. The appellants contend that the bankruptcy court erred in concluding that fewer than three claim holders brought the involuntary petition against Atwood. The Court disagrees with the appellants. In addition, they contend that the bankruptcy court erred in concluding that Atwood had twelve or more creditors with claims against him that were not contingent, not subject to bona fide disputes, nor paid postpetition in a voidable transfer. Because the record is not clear on this issue, the Court cannot determine whether the bankruptcy court erred in its determination of this issue. Accordingly, the Court remands this case with instructions.

## ANALYSIS

I. Standard of Review and Summary Judgment

When a district court reviews a final order of the bankruptcy court, it sits as an appellate tribunal. *In re Cornelison*, 901 F.2d 1073, 1075 (11th Cir.1990) (per curiam). In this role, the district court is constrained by traditional standards of appellate review. *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988); *In re Brown*, 851 F.2d 81, 84 (3d Cir.1988). This means that the bankruptcy court's findings of fact are to be accepted as long as they are not clearly erroneous, but its conclusions of law are subject to plenary, or *de novo*, review. *In re Thomas*, 883 F.2d 991, 994

(11th Cir.1989); *In re Fielder*, 799 F.2d 656, 657 (11th Cir.1986); *see* Bankruptcy Rule 8013; *see also, In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990) (discussing the standard of review of the Court of Appeals in a bankruptcy case).

By entering summary judgment, the bankruptcy judge indicated that there were no genuine issues of material fact. In reviewing an order granting summary judgment, a district court must view the case "in the same manner as the bankruptcy court, asking whether there are any genuine issues of material fact and whether [the moving party] is entitled to judgment as a matter of law, viewing the record and facts in the light most favorable to ... the non-moving party." *E.g., In re Lawler*, 106 B.R. 943, 953 n. 42 (N.D.Tex.1989) (citations omitted); *see also In re Cress*, 106 B.R. 246 (D.Kan.1989).

As the parties seeking summary judgment, the defendants bear the burden initially of demonstrating that there is no material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1987). If the moving party demonstrates that the record reveals no genuine issue of material fact, then the non-moving party must rebut the summary judgment motion by identifying specific facts showing a genuine issue of material fact. *E.g., Young v. General Foods, Corp.*, 840 F.2d 825 (11th Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989).

All reasonable doubts about the facts are to be resolved in favor of the non-movant, although "the non-moving party ... bears the burden of coming forward with sufficient evidence of every element that he or she must prove." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987); *see also Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Of course, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original).

## II. Twelve Claim Holders

Because involuntary bankruptcy is a severe remedy, Congress prefers that creditors settle disputes outside bankruptcy. *In re Leach*, 92 B.R. 483, 487 (Bankr.D.Kan. 1988), *amended on other grounds*, 102 B.R. 805 (Bankr.D.Kan.1989). Accordingly, the Bankruptcy Code restricts creditors' right to file an involuntary bankruptcy petition. Section 303(b)(1) controls who may file an involuntary case against a debtor, and states in relevant part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition ...

(1) by three or more entities each of which is either a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute* ... if such claims aggregate at least $5,000....

(2) if there are fewer than 12 *such holders* excluding any ... transferee of a transfer that is voidable under ... 11 U.S.C. ... § 549, by one or more of *such holders*....

11 U.S.C. § 303(b)(1) (emphasis added).

To determine whether the petitioning creditors have met the requirements of section 303(b), the bankruptcy court must determine whether the petitioning creditors and the debtor's other creditors hold claims that are "not contingent as to liability or the subject of a bona fide dispute." [1]

Then the court must count the qualifying claims. If there are fewer than twelve non-voidable [2] qualifying claims,

---

**1.** The Bankruptcy Code has no term for claims that are not contingent and not subject to bona fide disputes. Because only these claims qualify to be counted under section 303(b), the Court will refer to them as "qualifying claims." The creditors who hold these claims will be called "qualifying creditors."

**2.** To determine the total number of qualifying claims that must be counted, the court must exclude claims that are voidable under section 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code. 11 U.S.C. § 303(b)(2).

Petitioning creditors, however, qualify even if their claim is voidable. 11 U.S.C. § 303(b)(1).

then one or two of the qualifying creditors may file an involuntary bankruptcy proceeding. If there are twelve or more qualifying claims, excluding voidable claims, the debtor cannot be forced into involuntary bankruptcy by fewer than three of the qualifying creditors. Although this process sounds simple, in practice it is difficult to determine whether a claim is contingent or subject to a bona fide dispute.

## A. Post–Petition Payments and Voidable Claims

In general, a court must count the debtor's creditors as of the date of the petition. If three qualifying creditors join in the petition, the debtor may not defeat the petition by paying one of the debts after the petition is filed. 2 *Collier on Bankruptcy*, para. 303.08[1]. To determine the total number of qualified creditors a debtor has, however, courts should exclude creditors who receive voidable transfers. 11 U.S.C. § 303(b)(2).

Section 549 of the Bankruptcy Code allows the bankruptcy trustee to avoid certain postpetition transfers of property of the bankruptcy estate. Section 549(b) provides a narrow exception for transfers after the filing of an involuntary petition, but clearly indicates that there is no exception for transfers in exchange for satisfaction of a prepetition debt. Some postpetition payments are not voidable, however. A transfer is voidable only if property of the estate is transferred, 11 U.S.C. § 549, and a debtor's postpetition earnings are not property of the estate. 11 U.S.C. § 541(a)(6).

■ There is evidence in the record on appeal that Atwood earns money as a retired military officer. The Court cannot determine from the record, however, whether the debts paid after the petition was filed were paid from these earnings, or from property of the estate. If they were paid with postpetition earnings, they may be counted. If, on the other hand, they were paid with property of the estate, the bankruptcy court must exclude them. Because this distinction is critical in deciding whether these claims should be counted, the Court will remand the case to the bankruptcy court to decide this issue.

## B. Small, Recurring Claims

■ Some off the debts that Atwood paid after the petition was filed might be characterized as small, recurring claims. The Bankruptcy Code has no specific exception for small, recurring claims, and a literal reading of the Code suggests that all creditors with claims that are not excluded by section 303(b)(2) should be counted to determine whether the debtor has fewer than twelve creditors. Nevertheless, a former Fifth Circuit decision requires that small, recurring debts, such as a monthly utility bill or rental payment, be excluded. *Denham v. Shellman Grain Elevator, Inc.*, 444 F.2d 1376 (5th Cir.1971). Although *Denham* was decided prior to the adoption of the present Bankruptcy Code, nothing in the Code suggests a change in congressional intent on this issue. 2 *Collier on Bankruptcy*, Para. 303.08 (15th Ed.1990). Other courts have disagreed with the Fifth Circuit's position on this issue, preferring to rely on the letter of the law. *In re Okamoto*, 491 F.2d 496, 498 (9th Cir.1974); *Theis v. Luther*, 151 F.2d 397 (8th Cir.1945), *cert. denied*, 327 U.S. 781, 66 S.Ct. 681, 90 L.Ed. 1009 (1946). Nevertheless, this Court is bound by the decision of the former Fifth Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

■ This record provides this Court with enough information to determine whether any claims are small, but even small claims may be counted unless they are also recurring. For example, the debtor paid $18.00 to the Greater Savannah Hospital for Ani-

---

Thus, the debtor may not avoid involuntary bankruptcy by, for example, paying a petitioning creditor's claim out of the property of the estate. That transfer would be a voidable transfer under section 549, but it would not deprive the court of jurisdiction. 2 *Collier on Bankrupt-*

*cy*, para. 303.08[1] (15th ed. 1990). Thus, if Gannam's claim is neither contingent nor subject to a bona fide dispute, the Court must count him as a petitioning creditor even though he has been paid and has attempted to withdraw from the petition.

mals after the petition was filed. Counsel developed at Atwood's deposition that this bill was not for a guard dog, but for a small terrier. The testimony did not clarify whether Atwood took the pet in for a periodic examination (hopefully, a recurring debt) or for treatment for a (hopefully) once-in-a-dog's-life injury (not a recurring debt). *See Denham,* 444 F.2d at 1378, 1379 (giving as examples of recurring debts "rent, groceries, drugs, etc.," and "utility bills and the like."). Consequently, the Court remands this case with instructions to the bankruptcy court to decide whether any of the claims are small, recurring debts.

### C. Bona Fide Disputes

#### 1. The Standard

█ Claims subject to bona fide disputes are not qualifying claims. Courts have formulated different standards for deciding whether a claim is subject to a bona fide dispute. Some use the same standards as those used in summary judgment motions. *E.g., In re Stroop,* 51 B.R. 210 (D.Colo. 1985). "If the defense . . . to the claim . . . raises material issues of fact or law so that summary judgment could not be rendered as a matter of law in favor of the creditor on trial of a claim, the claim is subject to a bona fide dispute." *Id.* at 212.

Another court defined a bona fide dispute as "an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith without fraud or deceit on the other side." *In re Johnston Hawks, Ltd.,* 49 B.R. 823, 830 (Bankr.D.Haw.1985). The court listed several factors to be considered in deciding whether a claim is subject to a bona fide dispute: (1) the nature of the dispute, (2) the nature and extent of the evidence and allegations presented in support of the claim and the debtor's defense, (3) whether the claim and defense are made in good faith and without fraud or deceit, and (4) whether on balance the interests of the creditor outweigh those of the debtor. *Id.* at 831.

The court in *In re Lough,* 57 B.R. 993 (Bankr.E.D.Mich.1986), criticized both of these approaches. The court noted that the *Stroop* test works well when the dispute is factually based. *Id.* at 997. If there is a substantial dispute about an issue of law but no disputed material facts, however, then the bankruptcy court would presumably have to resolve the question of law as if on a motion for summary judgment. *Id.* The court would be deciding the issue on its merits rather than ascertaining whether a bona fide dispute existed. This court agrees with *In re Lough* that Congress could not have intended bankruptcy courts to conduct such a searching inquiry.

*In re Lough* also criticizes the *Johnston Hawks* standard, for two reasons. First, the standard uses a balancing of interests test, but there is no basis for balancing in the statute. *Id.* at 996. Second, inquiring into "good faith," "fraud," and "deceit" requires subjective considerations, and nothing in the legislative history or language of the statute suggests that Congress intended bankruptcy courts to consider the subjective intent of the parties. *Id.* at 996–97. These criticisms have merit.

The court in *In re Lough* developed a much more workable standard for deciding whether claims are subject to bona fide disputes: "if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify. . . ." *Id.* at 997. The court noted:

> The legislative history makes it clear that Congress intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal. Congress plainly did not intend to require a debtor to pay a legitimately disputed debt simply to avoid the stigma of bankruptcy.

*Id.* With this legislative history in mind, the court explained that a bona fide dispute exists if "there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *Id.* A court need not resolve any of these

disputes, but only determine that they are genuine.

*In re Lough* is not the only decision that criticizes the standards set forth in *Stroop* and *Johnston Hawks*. At least one court has attempted to harmonize these approaches and to eliminate their respective weaknesses. The court in *In re Hope Communications, Inc.*, 59 B.R. 939 (Bankr.W.D.La.1986), combined the reasoning of each analysis to develop its own test: the court should place the burden on the petitioning creditor to show that its claim is not the subject to a bona fide dispute. *Id.* at 943; *see In re Rubin*, 769 F.2d 611, 615 (9th Cir.1985) ("Petitioning creditors cannot prevail unless they show that their claims are not subject to bona fide disputes, but the bankruptcy court is not without jurisdiction prior to this determination."). Whatever the merits of this test in determining whether a petitioning creditor qualifies, it is not helpful in determining whether other claims against the debtor should be counted to see whether the debtor has twelve or more qualifying creditors. Those additional creditors have no incentive to prove, in the involuntary bankruptcy proceeding, that their claims are subject to bona fide disputes. They are not petitioning the court, and if they do nothing, the court is more likely to dismiss the petition. In some cases, this may be preferable to the creditor. Thus, placing the burden on the creditors to show absence of bona fide disputes may not lead to a proper resolution of the issue. The courts need a standard that will facilitate counting for both purposes.

Several courts have agreed with the standard set forth in *In re Lough* and have adopted that test. *In re Busick*, 831 F.2d 745, 749–50 (7th Cir.1987); *In re Leach*, 92 B.R. 483, 487 (Bankr.D.Kan.1988); *In re Ramm Industries, Inc.*, 83 B.R. 815, 823 (Bankr.M.D.Fla.1988). It is useful both in counting the total number of qualifying creditors a debtor has and in deciding whether the petitioning creditors qualify. This Court adopts the standard developed by the *In re Lough* court. Claims do not qualify, and therefore should not be counted, if there is a genuine issue of material fact or a meritorious contention about applicable law.

### 2. Application to this Case

■ The bankruptcy court determined that Atwood had more than twelve creditors, excluding debts that were "not bona fide obligations." It is not clear how the bankruptcy court determined whether claims were subject to bona fide disputes. Applying the standard explained in this order, it is clear that some of the claims that the bankruptcy judge counted are actually subject to bona fide disputes. Thus, his findings of facts concerning the status of these claims were clearly erroneous. The debts Atwood owed to his nephew Charles Loncon and his sister Sarah Lanier arose through the estate of Atwood's mother. Atwood indicated in his deposition that his mother forgave the debt before she died.[3] Thus, there is a factual question whether Atwood's relatives have a claim or merely expect a gratuity. *See Matter of Sjostedt*, 57 B.R. 117, 120 (Bankr.M.D.Fla.1986) (promises to pay "out of friendship" fail for lack of consideration and thus cannot be the basis of a bona fide claim against the debtor's estate). This is a bona fide dispute, and these claims should not be counted.

■ Similarly, the statute of limitations apparently has run on the debt owed to Oscar Floran,[4] subjecting Floran's claim to a bona fide dispute. The bankruptcy court erroneously counted this claim. On remand, it should be excluded.

■ Robert R. Cook apparently has a claim against Atwood for $300. It is not clear, however, whether this claim is for legal services or consulting services. Cook was not licensed to practice law when these legal or consulting services were rendered. Thus, assuming the claim is for legal fees, Atwood might assert a defense. This genuine issue of material fact means that this claim should not be counted.

3. Deposition at 16.

4. Deposition at 54–57.

Joseph P. Bergen had a claim for legal fees against Atwood. After the petition was filed, Atwood sued Bergen for legal malpractice arising out of services for which Atwood owed legal fees. Bergen chose not to counterclaim for these legal fees, although the counterclaim was compulsory under Georgia law. O.C.G.A. § 9-11-13(a). At first glance, this legal malpractice suit appears to prove that Bergen's claim was subject to a bona fide dispute at the time of the petition. The malpractice claim could not provide a defense to the debt, however, but only a counterclaim to it. Generally, "the debtor's assertion of a counterclaim, even if of substance, does not render the petitioner's claim the subject of a bona fide dispute." *In re Drexler*, 56 B.R. 960, 969 (Bankr.S.D. N.Y.1986); *see In re J.B. Lovell Corp.*, 88 B.R. 459, 462 (Bankr.N.D.Ga.1988) (antitrust counterclaims do not render claims subject to bona fide disputes). Counterclaims may work a diminution of the claim, but they do not dispute the merits of the claim itself. *Drexler*, 56 B.R. at 969. Thus, Bergen's claim was not subject to a bona fide dispute when the petition was filed. Because claims are counted as of the date of the petition, Bergen's subsequent abandonment of the claim does not change this result. Thus, Bergen's claim should be counted, but the four other claims discussed in this section should not be counted because they are subject to bona fide disputes.

The Court cannot determine from the record on this appeal whether three petitioning creditors are needed to force Atwood into involuntary bankruptcy. To determine whether there are twelve or more qualifying creditors, the bankruptcy court should not count the four claims that are subject to bona fide disputes. Furthermore, some claims may not be counted because of voidable preferences, and some of the claims may be excluded as small, recurring debts. The bankruptcy court must resolve these issues before it counts the total number of qualifying creditors.

III. Three Petitioning Creditors

If the bankruptcy court concludes that there are twelve or more qualifying,

non-voidable claims against Atwood, then three claim holders would need to join together to force Atwood into involuntary bankruptcy. 11 U.S.C. § 303(b)(1) (1988). The bankruptcy court concluded that the petitioning creditors held only two claims. The Court agrees. Sipple and Gibson had only one claim between the two of them, and Gannam held the second claim.

The parties do not dispute the facts concerning this issue. Sipple and Gibson merely contend that their Superior Court judgment could be construed as two separate claims. The bankruptcy court found that Sipple and Gibson held only one claim against Atwood, in the form of their joint judgment against him. Other bankruptcy courts have held that "joint holders of an obligation constitute a single creditor for purposes of § 303(b)." *In re Herndon & Co.*, 87 B.R. 204, 205 (Bankr.M.D.Fla.1988) (citing *In re Averil, Inc.*, 33 B.R. 562 (Bankr.S.D.Fla.1983) (two individual owners of an undivided interest in promissory notes); *In re McMeekin*, 18 B.R. 177 (Bankr.D.Mass.1982) (joint payees on a promissory note)). The bankruptcy court relied on these cases to find that the single judgment held by Sipple and Gibson against Atwood constituted a single claim. Consequently, there were at most only two petitioning creditors. Because the bankruptcy court held that there were no genuine issues of material fact, and Atwood was entitled to summary judgment as a matter of law, the bankruptcy court granted the motion for summary judgment.

After a careful review of the law relating to the issue of joint judgments, the Court agrees with the bankruptcy court's conclusion on this issue. No cases suggest a contrary outcome. Sipple and Gibson cite *Matter of Gill Enterprises, Inc.*, 15 B.R. 328 (Bankr.D.N.J.1981) for the proposition that a single order and judgment encompassing individual claims does not merge those claims for purposes of 11 U.S.C. § 303(b)(1). Actually, *Gill* concerns separate claims by a company and its subsidiary. The principles in *Gill* do not illuminate any issue in this case. Thus, the

bankruptcy court's decision on this issue was correct.

## CONCLUSION

Because the Court cannot decide from the record on appeal whether Atwood had more than twelve qualifying creditors, the Court remands this case to the bankruptcy court for further proceedings. It is clear that the petitioning creditors had fewer than three qualifying claims. Therefore, if the bankruptcy court, applying the appropriate standards as explained in this order, determines that Atwood had twelve or more qualifying creditors, then it should grant the debtor's motion for summary judgment and dismiss the petition. If, on the other hand, the court determines that Atwood had fewer than twelve qualifying creditors at the time that the petition was filed, then the court must deny the motion.

SO ORDERED.