**Michael and HeChung HUSZTI,**
**Appellants,**

v.

**William HUSZTI, Anna Chong–Huszti,**
**and BAM Investment Group,**
**LLC, Appellees.**

**Civil Action No. 10–14111.**
**Bankruptcy No. 10–65767.**

United States District Court,
E.D. Michigan,
Southern Division.

July 14, 2011.

Adam L. Wiener, Law Offices of Adam L. Wiener, Southfield, MI, for Appellants.

John Larkin, Livonia, MI, for Appellees.

*OPINION AND ORDER REVERSING THE ORDER OF THE BANK-RUPTCY COURT DENYING AP-PELLANTS' MOTION TO DISMISS and REMANDING THE CASE TO THE BANKRUPTCY COURT*

MARK A. GOLDSMITH, District Judge.

## I.  INTRODUCTION

This is a bankruptcy appeal. On September 29, 2010, the Bankruptcy Court for the Eastern District of Michigan entered an order denying the motion of Appellants William and Anna Huszti to dismiss the involuntary bankruptcy petition filed against them by Appellees Michael and HeChung Huszti, and their business, BAM Investment Group, LLC. The Bankruptcy Court denied the motion, finding that "three or more entities . . . each of which is a holder of a claim" filed the involuntary bankruptcy petition, as required pursuant to 11 U.S.C. § 303(b)(1), and that the action should therefore proceed. Appellants appeal, claiming that only two entities, at most, filed the involuntary petition and that, accordingly, § 303(b)(1)'s requirement for "three or more entities" is unsatisfied, rendering the filing of the involuntary petition improper.

This matter is fully briefed. On February 17, 2011, the Court held a hearing on this matter. For the reasons that follow, the Court reverses the Bankruptcy Court's order allowing the involuntary bankruptcy petition to proceed, and remands the case to the Bankruptcy Court with instructions to dismiss the petition.

## II.  BACKGROUND

The background facts are not in dispute. Appellants Michael and HeChung Huszti are husband and wife, as are Appellees William and Anna Huszti. Michael and William are brothers. Appellants and Ap-pellees were joint owners of BAM Investment Group, LLC; however, all interests in the business were eventually transferred to Appellees.

The business relationship between the brothers fell apart, leading Appellees to file a lawsuit in a Michigan state court against Appellants. The state court complaint contained five counts, each of which was brought on behalf of "Plaintiffs" collectively. The state court action ended in a settlement embodied in a consent judgment:

> IT IS HEREBY ORDERED AND ADJUDGED that Plaintiffs, William Huszti, Anna Huszti and BAM Investment Group, LLC are awarded a judgment in their favor in the amount of $500,000 inclusive of costs and attorney fees against Defendants Michael Huszti, HeChung Huszti and HLI Development Corp., jointly and severally.

> This judgment resolves the last pending claim and closes the case.

On August 16, 2010, Appellees filed an involuntary bankruptcy petition against Appellants pursuant to 11 U.S.C. § 303(a). On September 8, 2010, Appellants filed a motion to dismiss the petition pursuant to 11 U.S.C. § 303(b)(1), which authorizes the filing of an involuntary petition if commenced "by three or more entities, each of which is . . . a holder of a claim against [a debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." Appellants argued that, although the involuntary petition was brought by three entities (*i.e.*, William and Anna Huszti, and BAM Investments), the three entities only count as one for the purposes of § 303(b)(1) because, under the case law, multiple entities that jointly hold a claim constitute only one entity for purposes of § 303(b)(1).

Although acknowledging that the "overwhelming weight of the case law" supports Appellants' position, the Bankruptcy Court denied Appellant's motion to dismiss, stating from the bench:

> The Court recognizes that the weight of the case law, perhaps even fairly characterized as the overwhelming weight of the case law would suggest that when multiple claim holders have a joint or perhaps joint and several claim against the alleged debtor, those multiple entities should only be counted as one. The Court simply cannot agree with that interpretation of Section 303(b)(1).
>
> It's as clear as it can be to the Court that each of the three entities who filed this petition is a holder of a claim against the debtor. We can save for another day a ruling when the claim is only joint and not joint and several. Because in this case the judgment that we have reviewed makes it clear that the judgment is joint and several.
>
> And as counsel for the alleged debtors has stated here on the record, or agreed on the record, the fact that it's joint and several means that any of the creditors, any of the holders of the claim can pursue that claim individually and therefore is a holder of the claim. The motion is denied.

This appeal followed.

### III. STANDARD OF REVIEW

■ The bankruptcy court's findings of fact are reviewed for clear error; its conclusions of law are reviewed *de novo.* *In re United Producers, Inc.,* 526 F.3d 942, 946 (6th Cir.2008).

### IV. ANALYSIS

Title 11, § 303(b)(1) of the United States Code authorizes the filing of an involuntary petition against a debtor if commenced "by three or more entities, each of which is ... a holder of a claim against [a debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." A "claim" is defined in the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A).

■ "The purpose of requiring at least three creditors to launch an involuntary case ... is to necessitate some joint effort between creditors." *In re Iowa Coal Mining Co., Inc.,* 242 B.R. 661, 670 (Bankr.S.D.Iowa 1999). As one court has explained,

> the filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor. Like a voluntary petition, the credit world is put on notice that the petition has been filed and that the alleged debtor is under the jurisdiction of the Court. However, unlike the situation surrounding a voluntary petition, an involuntary debtor may have no need of the extreme remedy of bankruptcy, yet he or she may be unwillingly saddled with the harsh effects it may cause, such as the loss of credit-standing, inability to transfer assets and carry on business affairs, and the public embarrassment, all of which may be associated with the filing of a voluntary petition. For these reasons, an involuntary petition should be scrutinized carefully by the courts so as to avoid injustice. Indeed, it is for just that reason that Congress has long required strict criteria for qualification to file and for allowance of involuntary petitions.

*In re McMeekin,* 18 B.R. 177, 177–178 (Bankr.D.Mass.1982).

■ The sole question for decision in this case is: Do Appellees William and

Anna Huszti, and BAM Investment Group, LLC, hold separate claims against Appellants or do they together hold only one claim against Appellants? If Appellees jointly hold a claim for the purposes of § 303(b)(1), the Bankruptcy Court erred in denying Appellants' motion to dismiss the involuntary petition. If they each independently hold separate claims against Appellants for purposes of § 303(b)(1), the Bankruptcy Court's order denying Appellants' motion to dismiss must be affirmed.

The Bankruptcy Code does not address whether joint holders of a single obligation are treated as one holder of the claim or, rather, as separate holders of the claim for numerosity purposes under § 303(b)(1). In determining whether Appellees hold separate claims against Appellants for counting purposes under § 303(b)(1), the Court is guided by the discussion and examples set forth in a respected bankruptcy treatise:

> Joint holders of an obligation should be scrutinized carefully for counting purposes. A husband and wife as joint payees under a promissory note can each be a petitioning creditor if each spouse individually holds a claim and a separate right to payment under applicable state law. Conversely, if the payment on a note could only be enforced by a husband and wife jointly, their claims cannot be separated for counting purposes; they would constitute one entity, not two. A single judgment held by two creditors can constitute one single claim or two distinct claims, depending on applicable state law. The parties' intention and behavior are also relevant

factors to consider. If there were distinct and independent obligations giving rise to the judgment, each holder may be separate for qualifying as a petitioning creditor under section 303(b). The fact that the three petitioning creditors all have claims relating to the same dispute does not eliminate their separateness for purposes of filing an involuntary case. Thus, a debtor-husband could not successfully challenge the separate creditor status of his ex-wife and her lawyers and accountants because each is an eligible petitioning creditor. Similarly, claims against an involuntary debtor under a collective bargaining agreement that would be distributed to separate funds can be treated as separate for purposes of determining the number requirement, notwithstanding entry of a judgment.

2 Collier on Bankruptcy ¶ 303.14[7] (16th ed. 2010) (footnotes omitted). *See also* 2 Bankruptcy Service, Lawyers Edition, Ch. 13: Code §§ 301–303, at § 13:218 (2010) ("For purposes of determining number of petitioning creditors under 11 USCA § 303, creditors who obtained single judgment against debtor hold only one claim between two of them in form of their joint judgment, rather than 2 claims").

In their briefs, the parties cite a number of cases, all of which are in accord with Collier's succinct discussion of § 303(b)(1), and reflect the flexible manner in which the case law has developed to address a variety of different factual circumstances. These cases, which are described in the margin, inform the Court's analysis.[1]

---

1. *See In re Tichy Electric Co., Inc.*, 332 B.R. 364, 367, 375 (Bankr.N.D.Iowa 2005) (three separate entities, although "significantly interrelated," constitute three separate entities holding separate claims where the three entities hold three separate claims against the debtor in varying amounts); *In re Moss*, 249

B.R. 411, 421 (Bankr.N.D.Tex.2000) (two separate entities hold a single claim where the two entities were joint payees pursuant to a written contract); *In re Iowa Coal Mining Co., Inc.*, 242 B.R. at 670 (three coal companies, although separate legal entities, constitute only one entity with one claim where (i) the

Ultimately, the Court finds the decisions in *In re McMeekin,* 16 B.R. 805 (Bankr. D.Mass.1982), and *In re Atwood,* 124 B.R. 402, 404, 409 (S.D.Ga.1991), to be the most persuasive in the context of the present dispute. The question presented in *McMeekin* was whether joint payees on a promissory note, although separate individuals, held only a single claim for purposes of § 303(b)(1), where the note was not divisible and contained no promise to pay the two payees separate amounts; rather, the note promised to pay a fixed sum to two payees who were referred to in the conjunctive. *Id.* at 806. In resolving the issue, the court examined applicable state law—a provision of the Uniform Commercial Code—which provided: "An instrument payable to the order of two or more persons ... if not in the alternative is payable to all of them, and may be ... enforced only by all of them." *Id.* at 808 (quoting U.C.C. § 3–116).[2] Based on this provision of state law, the court concluded that payment on the note could only be enforced by the two payees jointly, and thus the two payees constituted a single holder of the claim for counting purposes under § 303(b)(1). *See also In re Atwood,* 124 B.R. 402, 404, 409 (S.D.Ga.1991) (separate entities jointly holding a money judgment against multiple debtors who were jointly and severally liable for the judgment hold only one claim under § 303(b)(1)).

In the present case, the judgment is the functional equivalent of the promissory note in *McMeekin.* Like the payees of the promissory note in *McMeekin,* the judgment creditors in the present case are separate persons or entities, who are listed in the conjunctive and are collectively entitled to one, indivisible sum of money. Moreover, Michigan has adopted the same U.C.C. provision relied on in *McMeekin. See* Mich. Comp. Laws § 440.3110(4) ("If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be ١.. enforced only by all of them").[3] Like the judgment cred-

coal companies had been dealing with the debtors as one entity for a long period of time, (ii) have subsumed the claimed obligations into a single agreement, and (iii) have presented themselves jointly to the court as one creditor); *In re Richard A. Turner Co., Inc.,* 209 B.R. 177, 179 (Bankr.D.Mass.1997) (three separate trusts holding claims in differing amounts under a single collective bargaining agreement constitute three separate entities, each holding a claim, despite the fact that the court entered a single judgment in favor of the three trusts; the judgment, although reduced to a single amount in favor of the trusts, was "easily divisible"—*i.e.,* each trust was owed varying amounts, which were aggregated to produce a single judgment amount); *In re Gilbert,* 115 B.R. 458, 461 (Bankr.S.D.N.Y.1990) (one entity holding multiple claims cannot create additional entities by treating separate claims as separate entities).

2. The court noted that, while the promissory note did not qualify as a negotiable instrument, another provision of the U.C.C. adopted in Massachusetts made this rule applicable to nonnegotiable instruments, thus encompassing the promissory note at issue in that case. *Id.* at 808 (referencing U.C.C. § 3–805).

3. Although Michigan's version of the U.C.C. does not include the equivalent of § 3–805— the provision cited in *McMeekin,* which makes Article 3 applicable to non-negotiable instruments—the Court nonetheless concludes that Michigan law would hold that a judgment payable to two or more judgment creditors in the conjunctive is jointly held and enforceable only by all the creditors jointly. This flows from the fact that there is no valid reason for the law to treat joint creditors differently based on whether they hold a negotiable instrument or a judgment. In either context, when the word "and" separates the names of multiple payees, the payees have only a joint right to payment, enforceable by all of them. *See Atwood,* 124 B.R. at 409–410 (quoting *In re Herndon & Co.,* 87 B.R. 204, 205 (Bankr. M.D.Fla.1988) for the proposition that "joint holders of an obligation constitute a single creditor for purposes of § 303(b)" and, conse-

itors in *Atwood*, the judgment creditors here jointly hold a money judgment against multiple debtors. Thus, *McMeekin* and *Atwood* support the conclusion that Appellees William and Anna Huszti and BAM Investment Group, LLC hold only a single claim for counting purposes under § 303(b)(1).

It is noteworthy that the judgment in the present case, which is the result of a settlement between the parties, is not readily divisible among the creditors. By contrast, in *In re Richard A. Turner Co., Inc.*, 209 B.R. 177, 179 (Bankr.D.Mass. 1997), the case on which Appellees mainly rely, the judgment was readily divisible. There, three separate creditor entities held unrelated claims against the debtor in differing amounts; however, the claims were brought in one lawsuit and reduced to a single judgment totaling the aggregate of the three claims. The debtor argued that because the three claims were reduced to one judgment, there was only one claim for the purposes of § 303(b)(1). The court rejected the argument and instead "look[ed] beyond the judgment to determine the nature of the debt." Because the individual debts comprising the judgment were unrelated and readily allocable among the creditors, the court found that the creditors held divided interests in the judgment and that, accordingly, each creditor held a separate claim—and had a separate right to payment—under the judgment. *Id.* at 179–180.

Appellees argue that *Turner* should be followed here. Appellees state that each has a separate and distinct claim against Appellants, and each constitutes a separate "holder" under § 303(b)(1). Appellees ex-

plain that BAM Investment Group, LLC had a claim against Appellants in the amount of $540,000 for defalcation of corporate property, and William and Anna Huszti each had a claim against Appellants for approximately $114,691.[4] Consequently, Appellees believe that each of them holds a separate claim under § 303(b)(1) pursuant to *Turner*.

The argument is not persuasive. *Turner* stands for the proposition that individual payees on a single judgment hold separate claims for the purposes of § 303(b)(1) if the judgment is readily divisible. A divisible judgment, in this context, means a judgment that comprises separate claims that have been aggregated and reduced to a single judgment amount, but the constituent amounts are easily traceable to each creditor. In the present case, while the judgment merges the separate claims of each of the Appellees, the judgment cannot be broken down and apportioned to Appellees in the amount of their respective claims, as was the case in *Turner*. Instead, the judgment in this case reflects a seemingly arbitrary number—the settlement amount—which bears no obvious relationship to the separate claims. The Court acknowledges that the complaint giving rise to the judgment may have contained separate causes of action asserted by Appellees individually; however, the separateness of any individual claims was not maintained and reflected in the final judgment, such that the judgment can be divided among its holders. The Court finds that Appellees hold an undivided interest in the judgment and that, accordingly, *Turner* is not relevant here.

quently, rejecting the argument that two separate entities jointly holding a money judgment hold two separate claims under § 303(b)(1)).

4. Appellees state that they brought a single action in state court, and not separate actions, for reasons of judicial economy, convenience, and reduction in expenses of the parties. Resp. at 10.

Appellees' reliance on *Hawley v. Cramer*, 4 Cow. 717 (N.Y.Sup.1825), cited in their supplemental brief, is misplaced for the same reason. The *Hawley* court held, without citation to any authority, that either of several joint judgment creditors may take out execution without consulting the other creditors, unless there is some agreement to the contrary. *See also* 33 C.J.S. Executions § 7 (2009) (citing *Hawley* for the same proposition of law). Critically, however, the five creditors in *Hawley* were owed five separate and distinct amounts of money that were aggregated and reduced to a single "joint bond" held jointly by all the creditors. To the extent *Hawley* is still good law in New York and applicable in the context of 11 U.S.C. § 303(b)(1), it is exactly analogous to *Turner* and, as such, irrelevant here.[5]

The Bankruptcy Court reached a conclusion contrary to the one reached by this Court. The Bankruptcy Court determined that Appellees each hold a separate claim against Appellants under § 303(b)(1) based on the fact that the judgment holds Appellants jointly and severally liable for the judgment amount. According to the Bankruptcy Court, the fact that Appellants are jointly and severally liable means "any of the creditors [referring to Appellees] ... can pursue that claim individually and therefore is a holder of the claim." This holding is erroneous. The fact that Appellants are jointly and severally liable for the judgment amount means only that Appellants are "each liable [and] individually responsible for the entire obligation, but

[the] paying party may have a right of contribution and indemnity from nonpaying parties." Black's Law Dictionary 997 (9th ed. 2009). That Appellants, as judgment debtors, are jointly and severally liable does not mean, as the Bankruptcy Court held, that each of the Appellees, as judgment creditors, can separately enforce the consent judgment against Appellants. As the Court has explained above, Michigan law provides that the consent judgment may only be enforced jointly, given that the consent judgment identifies the judgment creditors in the conjunctive and not in the alternative, and in light of the fact that the judgment is not divisible.

## V. CONCLUSION

For the reasons stated above, the order of the Bankruptcy Court denying Appellants' motion to dismiss the involuntary bankruptcy petition is reversed; the case is remanded to the Bankruptcy Court with instructions that it dismiss the petition.

SO ORDERED.

---

**5.** Appellees believe that Michigan law affords joint judgment creditors separately enforceable claims because certain form orders published by Michigan's State Court Administrative Office pertaining to judgment execution issues leave room for the listing of only one moving party in the body of the document. This fact does not constitute cognizable legal authority. Nor does the fact that a Michigan court rule regarding proceedings supplemen-

tal to judgments (MCR 2.621) does not draw a distinction between cases involving a single plaintiff and multiple plaintiffs.

Appellees also claim that Appellants "engaged in a number of nefarious transactions designed to make themselves uncollectable." Appellee Br. at 14–15. However, even assuming the truth of this allegation, Appellees have not shown how it is relevant to the present inquiry.