**In re Stefan FORSTER, Debtor.**

**No. 11–71722.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Jan. 3, 2012.

Stefan Forster, Roanoke, VA, pro se.

### *DECISION AND ORDER*

ROSS W. KRUMM, Bankruptcy Judge.

An involuntary petition (herein the Petition) was filed against Stefan Forster (herein Stefan or Debtor) on August 16, 2011,[1] and an Involuntary Summons was issued by the Clerk of the Bankruptcy

---

1. *In re Forster,* Chapter 7 Involuntary Pet., August 16, 2011, ECF Docket No. 1.

Court on August 18, 2011.[2] Stefan elected to file an Answer to the Petition pursuant to Federal Rule of Bankruptcy Procedure 12(a).[3] In his Answer, Stefan contested the Petition, alleging that it failed to meet the statutory requirements of 11 U.S.C. § 303(b) that there be at least three entities holding claims.[4] In his prayer for relief, Stefan asks for dismissal and for imposition of damages pursuant to 11 U.S.C. § 303(i). A hearing was held on November 8, 2011, and memorandum of law was submitted by the petitioning creditors, Lisa Wonderley (formerly Lisa Forster, herein Lisa), and her parents, John L. Wonderley (herein John) and Jean M. Wonderley (herein Jean) who are husband and wife (herein Mr. and Mrs. Wonderley will collectively be the Wonderleys).[5] A memorandum of law has also been submitted by the Stefan.[6] The issue for determination is whether John and Jean each hold a claim against Stefan thereby satisfying the statutory requirement of 11 U.S.C. § 303(b) that an involuntary case "be commenced against a person ... (1) by three or more entities, each of which is ... a holder of a claim against such person ..." 11 U.S.C. § 303(b). The Court has reviewed the pleadings, the evidence submitted and the authorities cited by the parties and makes the following findings of facts and conclusions of law.

## FACTS

The involuntary petition lists Lisa Forster, John L. Wonderley, and Jean M. Wonderley as Petitioning Creditors (herein collectively Petitioners). Stefan's debt to John and Jean arose as a result of a loan to Stefan and Lisa evidenced by a promissory note dated May 4, 2004, and payable "to the order of John L. & Jean M. Wonderley ... [in] the sum of $12,000.00 with interest from May 1, 2004...." (herein the Note).[7] In a divorce decree dated August 11, 2010, the Circuit Court for the County of Botetourt decreed that Stefan was liable for the Note.[8] The Wonderleys sued Stefan in Roanoke County District Court and obtained a judgment in favor of "Wonderley, John L. and Wonderley, Jean M." [9] Lisa obtained a separate judgement against Stefan for $105,371.70.[10]

The Petition states that John Wonderley's claim arises from a $12,739.19 judgment against Debtor and that Jean Wonderley's claim arises from "Judgment— same as above" (referencing John Wonderley's $12,739.19 judgment).[11] Stefan's Answer alleges that the Wonderleys together

---

2. *In re Forster*, Involuntary Summons, August 18, 2011, ECF Docket No. 3.

3. *In re Forster*, Answer to Involuntary Pet., October 5, 2011, ECF Docket No. 17.

4. *In re Forster*, Answer to Chapter 7 Involuntary Pet., October 5, 2011, ECF Docket No. 17.

5. *In re Forster*, Memorandum, November 1, 2011, ECF Docket No. 28.

6. *In re Forster*, Memorandum in Supp. of Dismissal of Involuntary Chapter 7 Pet., November 1, 2011, ECF Docket No. 29.

7. *In re Forster*, Memorandum Exhibit D, November 1, 2011, ECF Docket No. 29.

8. *In re Forster*, Judgment Attached to Memorandum, November 1, 2011, ECF Docket No. 29.

9. *In re Forster*, Judgment Attached to Memorandum, November 1, 2011, ECF Docket No. 1.

10. *In re Forster*, Chapter 7 Involuntary Pet., August 16, 2011, ECF Docket No. 1. No attachment evidencing this judgment debt was filed with the involuntary petition.

11. *In re Forster*, Chapter 7 Involuntary Pet., August 16, 2011, ECF Docket No. 1.

hold only one claim under 11 U.S.C. § 303(b) and therefore the Petitioners hold only two claims in total, which fails to satisfy the requirement under 11 U.S.C. § 303(b)(1) that three creditors with three separate claims file an involuntary petition.[12] Stefan's Answer seeks dismissal of the petition.[13] Petitioners argue that the Wonderleys constitute two separate claimants, and that accordingly Petitioners do satisfy the requirements of § 303(b).

## DISCUSSION

 Involuntary petitions "should be scrutinized carefully by the courts so as to avoid injustice." *See Huszti,* 451 B.R. at 719 (quoting *In re McMeekin,* 18 B.R. 177, 177–78 (Bankr.D.Mass.1982)). The burden rests on the Petitioners to satisfy the statutory requirements under § 303(b) for an involuntary bankruptcy petition. *Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709, 715–716 (4th Cir.1993).

Section 303(b) of the U.S. Bankruptcy Code provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

(2) if there are fewer than 12 such holders, excluding an employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims.

11 U.S.C. § 303(b). It is not disputed that Stefan has more than twelve creditors.[14] Moreover, the value of Petitioners' claims clearly aggregate more than the threshold imposed in § 303(b)(1).[15] Therefore, the only question is whether Petitioners satisfy the requirement of § 303(b)(1) that the involuntary petition be brought by at least three entities, each of which holds a separate claim against the debtor that is not contingent nor the subject of a bona fide dispute. It is uncontested that Lisa is an entity and holds a separate, valid claim against Stefan. As such, the court need only address whether Mr. and Mrs. Wonderley are separate entities with separate claims against the Stefan.

### A. The Wonderleys As Separate Entities

The term 'entity' under the Bankruptcy Code "includes *person,* estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15) (*emphasis added*). A "person" includes an "*individual,* partnership, and corporation. . . ." 11 U.S.C. § 101(41) (*emphasis added*). The Wonderleys are separate individuals and

**12.** *In re Forster,* Answer to Chapter 7 Involuntary Pet., October 5, 2011, ECF Docket No. 17.

**13.** *Id.*

**14.** Debtor filed a voluntary Chapter 13 proceeding on September 14, 2011, one day before he received notice of the involuntary petition filed against him. The Schedules filed in Debtor's second petition clearly evidence that Debtor has more than twelve creditors.

**15.** The aggregate of Petitioners' claims equals $118,110.89. *In re Forster,* Answer to Chapter 7 Involuntary Pet., October 5, 2011, ECF Docket No. 17.

■

therefore are separate persons under the Bankruptcy Code. As such, John and Jean Wonderley are also distinct entities under the Code. *See In re McMeekin*, 16 B.R. 805, 807–08 (Bankr.Mass.1982). Therefore, the separate entity portion of § 303(b)(1) is satisfied. 11 U.S.C. § 303(b)(1). However, this still leaves to be determined whether "each" of the entities is "a holder of a [separate] claim." *See Id.*

### B. The Wonderleys As Holders Of Separate Claims

■ As defined in the Bankruptcy Code, a "claim" is a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5). Petitioners state that each of the Wonderleys holds a separate right to payment because they have distinct property interests or estates in the judgment and because they hold the judgment as tenants in common under Va.Code Ann. § 55–21. Petitioners correctly note that the nature of their claims is based on their rights as judgment creditors.[16] Petitioners asserted in their Memorandum to this Court that "[t]he manner in which [the Wonderleys] filed the warrant in debt [from which their

judgment arose] was consistent with the promissory note" that established the Wonderleys' right to payment. Yet Petitioners fail to address the fact that their rights against Debtor as judgment creditors arose from, and were limited by, the promissory note that created their right to payment.

### 1. Petitioners' property rights arose from the promissory note

Petitioners correctly assert that the promissory note contains no language that John and Jean Wonderley took the note as tenants by the entirety, nor as joint tenants with the right of survivorship.[17] Even if Petitioners are correct that the Wonderleys did hold the note as tenants in common, their property law rights do not affect the analysis of their rights to enforce the promissory note.[18] The promissory note explicitly states that Debtor "promis[ed] to pay *to the order of* John L. *& and* Jean M. Wonderley (the Lender)."[19] *(emphasis added )*. The promissory note meets the requirements of a negotiable instrument as articulated in the Uniform Commercial Code,[20] and Virgi-

---

**16.** *In re Forster*, Memorandum page 3, November 1, 2011, ECF Docket No. 28. (Citing *Sands v. Roller* 118 Va. 191, 86 S.E. 857 (1915) for the proposition that a promissory note that is the basis for a judgment is merged into the judgment).

**17.** *Id.*

**18.** In *In re McMeekin*, the court reviewed the holding in *Fehling v. Cantonwine*, 522 F.2d 604 (10th Cir.1975) to determine the property interests of joint holders of a note. In *Fehling*, as in this case, a husband and wife held a promissory note in the conjunctive. The note made no reference to a right of survivorship, and the court found that the couple held the note as tenants in common and that upon death, the husband's one-half interest did not pass to the wife, leaving the wife with her separate one-half interest. The *McMeekin* court was careful to note, however, that *Fehl-*

ing only recognized the validity of each individual's one-half interest in the promise to pay. *McMeekin*, 16 B.R. at 809. The court continued, "[a] note ... which purports to be a promise to repay a fixed sum to two named payees, and which refers to the payees in the conjunctive, is nevertheless a single promise to pay. It creates a single right to payment, which may be shared jointly by the payees, and which may be enforced only by both payees." *Id.*

**19.** *In re Forster*, Memorandum in Support of Dismissal of Involuntary Pet. Ex. D, November 1, 2011, ECF Docket No. 29.

**20.** A negotiable instrument is:
"an unconditional promise to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

nia's adaptation of the U.C.C. will be dispositive in this case.

The analysis under the Virginia Commercial Code of rights to payment arising from a promissory note to two or more persons is based upon whether or not the payment is made to the individuals alternatively. If a note is payable to individuals alternatively, the note may be paid to all of them and "may be negotiated, discharged, or enforced by any or all of them in possession" of the note. VA.CODE ANN. § 8.3A–110(d) (2010). If a note is payable to two or more individuals not alternatively, the note may only be negotiated, discharged, and enforced by all of them. VA. CODE ANN. § 8.3A–110(d) (2010). Because the promissory note is payable to both John *and* Jean Wonderley, not one *or* the other alternatively, the note is payable to both the Wonderleys and *may only be negotiated, discharged, or enforced by both of them.* VA.CODE ANN. § 8.3A–110(d) (2010). Because their rights to payment arose from the promissory note, the Wonderleys could only enforce those rights by obtaining a joint judgment.

### 2. *The Wonderleys' joint judgment as a single claim*

A judgment in favor of multiple creditors "can constitute one single claim or two distinct claims, depending on applicable state law." *Huszti,* 451 B.R. at 720 (quoting Collier on Bankruptcy at ¶ 303.14[7] ). Where creditors are owed separate and distinct payments based on distinct provisions, and the creditors merely enforce their rights to payment with a joint judg-

ment, courts have found the creditors holders of distinct claims. *See In re Tichy Electric Co., Inc.,* 332 B.R. 364, 367, 375 (Bankr.N.D.Iowa 2005); *In re Mid–America Indus., Inc.,* 236 B.R. 640, 645 (Bankr. N.D.Ill.1999); *In re Richard A. Turner Co., Inc.,* 209 B.R. 177, 179 (Bankr.D.Mass. 1997). However, if the separate obligations due to multiple payees are not articulated, and instead one lump sum is payable to two or more individuals, courts have consistently held that the individuals hold only one claim between them. *See Huszti,* 451 B.R. at 722; *T.P. Herndon & Co.,* 87 B.R. 204, 205 (Bankr.M.D.Fla. 1988); *In re Averil,* 33 B.R. 562 (Bankr. S.D.Fla.1983).

Petitioners argue that nothing in the warrant in debt suggests that the Wonderleys were seeking judgment against Debtor in any capacity other than individually. Petitioners further contend that the Wonderleys each hold a "physically undivided" part of the entire judgment. *Jenkins v. Jenkins,* 211 Va. 797, 180 S.E.2d 516 (1971). However, the Wonderleys could not have brought two separate claims or obtained two separate judgments against Stefan in the Roanoke Court because of the manner in which the promissory note is worded. Also, because the Wonderleys can only enforce the right to payment jointly, the second of the separate claims would have be barred by res judicata. *See* Fed.R.Civ.P. 20(a). Finally, the Wonderleys have presented themselves to this Court as one creditor with one claim in Debtor's previous voluntary filings.[21]

---

is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
1. is payable on demand or at a definite time; and
2. does not state any other undertaking or instruction by the person promising or ordering payment in addition to the payment of money. . . ."

VA.CODE ANN. § 8.3A–104(a).

21. In Debtor's prior voluntary Chapter 13 case (Case No. 11–70394), filed February 25, 2011, the Wonderleys filed on June 6, 2011 a single proof of claim (Claim No. 17–1) arising from the Judgment.

Thus, their previous actions in this Court suggest that Wonderleys hold one claim. This Court holds that John and Jean constitute two entities with a single claim against Debtor.

### 3. Public policy

 The Wonderleys attest that the "one claim" theory would impose a burden on them for which they never bargained. However, the involuntary bankruptcy rules were not created to lessen the burden on creditors. The "strict criteria for qualification to file and for allowance of individual petitions" are enforced because of the "serious consequences" involuntary bankruptcy may have on the alleged *debtor*. *In re Huszti,* 451 B.R. 717, 719, *quoting In re McMeekin,* 18 B.R. 177, 177–78 (Bankr. D.Mass.1982) (*emphasis added*). Indeed, "the purpose of requiring at least three creditors to launch an involuntary case . . . is to necessitate some joint effort between creditors." *See Huszti v. Huszti,* 451 B.R. 717, 719 (Bankr.E.D.Mich.2011) (quoting *In re Iowa Coal Mining Co., Inc.*, 242 B.R. 661, 670 (Bankr.S.D.Iowa 1999)).

### CONCLUSION

For the reasons stated in this Decision and Order, the Court holds that the involuntary petition under Chapter 7 fails because the Petitioners do not meet the statutory requirement of 11 U.S.C. § 303(b) that "an involuntary case against a person is commenced . . . (1) by three or more entities, each of which is . . . a holder of a claim. . . ." Further, no other creditor has joined the petition ". . . before the case is dismissed. . . ." as is permitted by 11 U.S.C. § 303(c). Based upon the involuntary petition and the timely answer of the Debtor the case is ripe for dismissal. Accordingly, it is

### ORDERED

That the involuntary Chapter 7 petition filed against Stefan Forster be **DISMISSED**. It is

### FURTHER ORDERED

That the issue of damages under 11 U.S.C. § 303(i) will be subject of a pre-trial telephone conference call on February 2, 2012, at 11:30 a.m. with a call in number of 540–769–8744.

Copies of this Order are directed to be sent to Mark A. Black, Esquire, Counsel for Debtor; and to Richard E.B. Foster, Esquire, Counsel for Petitioning Creditors.